Filed:  June 3, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 95-1809
(CA-94-85)

Karl Blaise Stockton, etc.,

Plaintiff - Appellee,

versus

Barbour County Board of Education, et al,

Defendants - Appellants.

O R D E R

The Court amends its opinion filed May 5, 1997, as follows:

On the cover sheet, section 7, line 4 -- the following infor-
mation is added to the counsel listing:  "**ON BRIEF:** Peter W. D.
Wright, Richmond, Virginia, for Appellee."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

KARL BLAISE STOCKTON, by his
mother, Keri Stockton,
<u>Plaintiff-Appellee,</u>

v.

No. 95-1809

BARBOUR COUNTY BOARD OF
EDUCATION; WILLIAM PHILLIPS,
Superintendent,
<u>Defendants-Appellants.</u>

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
Irene M. Keeley, District Judge.
(CA-94-85)

Argued: March 6, 1997

Decided: May 5, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
BLACK, Senior United States District Judge for the District of
Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Claudia West Bentley, BOWLES, RICE, MCDAVID,
GRAFF & LOVE, Martinsburg, West Virginia, for Appellants. Nancy
A. Dalby, HAMSTEAD & ASSOCIATES, L.C., Charles Town, West
Virginia, for Appellee. **ON BRIEF:** Peter W. D. Wright, Richmond,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Keri Stockton brought suit on behalf of her disabled son, Karl Blaise Stockton (Blaise), against the Barbour County Board of Education under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. On March 3, 1995, the district court granted Stockton a preliminary injunction requiring the Board to bear the cost of Blaise's education at a private school, The Pathway School, for the remainder of the 1994-1995 school year. The Board argues that the district court erred in finding that Pathway was Blaise's "current educational placement" for purposes of 20 U.S.C. § 1415(e)(3) and therefore was barred from granting the injunction. We affirm the judgment of the district court, finding that, in the circumstances here, the relief awarded was "appropriate" under 20 U.S.C. § 1415(e)(2).

I.

Karl Blaise Stockton suffers from a number of disabilities including Tourette's syndrome (a neurological disorder), obsessive-compulsive disorder, and attention deficit hyperactivity disorder. He has specific learning disabilities related to spelling and mathematics. Blaise also becomes easily depressed, to the point of being suicidal.

After being taught by his mother through sixth grade, Blaise attended seventh grade at Philip Barbour Middle School in Barbour County, West Virginia. Despite receiving special education services, during the year he went from receiving B's and C's to making D's and F's and began avoiding school. In eighth grade, his school avoidance problem became severe; Blaise missed twenty-six days of school during the first nine weeks of classes. His IQ score declined from the superior range to the low average range. On November 18, 1992, Blaise was involuntarily admitted to Chestnut Ridge Hospital for psychiatric care after he threatened his mother and brother and attempted

2

to harm himself. Upon returning to school on March 8, 1993, Blaise attended for only nine days. On April 15, 1993, Stockton requested permission to home school her son. The school approved the request without any review of Blaise's individualized education program (IEP) and did not offer to provide any special education services.

On August 31, 1993, Stockton requested a due process hearing, contending that Blaise needed a residential placement in order to receive the "free appropriate public education" to which he was entitled under IDEA. Prior to the hearing, Blaise underwent examination by a child psychiatrist, a neuropsychologist, a neurologist, a social worker, and a Pennsylvania school psychologist certified in West Virginia. All advised that he was likely to be harmed by continued placement in public school and recommended that he be transferred to a residential setting. At the hearing, the county school psychologist and a psychiatrist testified that residential placement was unnecessary. The psychiatrist, who had not examined Blaise, stated that he was not familiar with the special education services available in the Barbour County schools.

In a decision dated May 17, 1994, the hearing officer concluded that Blaise did not require a residential setting provided that the county could furnish him, at a minimum, with school aversion therapy and instructors trained in Tourette's syndrome. The hearing officer instructed the county to convene an IEP committee within twenty days to consider all the educational alternatives open to Blaise. If the specified services could not be provided or proved ineffective, the hearing officer advised the committee to consider residential placement. The IEP committee met on June 6 and June 20. No decisions were made, and the school declined to discuss placement.

On June 24, 1994, Stockton enrolled Blaise in Pathway, a residential private school, and requested a due process hearing regarding the alleged futility of the IEP process. The second hearing officer limited her review to evidence not considered in the first hearing. She issued a decision on August 22, 1994 concluding that none of that evidence warranted reversal of the first hearing order.

On August 26, 1994, the IEP committee met for the third time and issued an IEP placing Blaise in the Barbour County schools with over

3

half of his time in regular education classes. The IEP called for school aversion therapy with either of two named professionals. Stockton contacted both doctors only to be informed that neither had been contacted by the school and neither was willing to perform the counselling. As of the first day of school, none of the relevant school staff had received training in Tourette's syndrome.

Blaise began attending Pathway on September 8, 1994. He promptly began receiving good grades, maintaining excellent attendance, and suffering no school aversion. He quickly met many of the goals set forth in the August 1994 IEP, achieving the math goal within one week. Furthermore, Blaise regained IQ scores in the superior range and became involved with the local emergency squad and a volunteer youth group.

On July 8, 1994, Stockton had brought suit in federal court challenging the May 17 hearing decision. On December 18, 1994, she filed a second suit requesting review of the second hearing decision. Unable to continue paying the tuition at Pathway, on February 27, 1995 Stockton sought a preliminary injunction requiring the Barbour County Board of Education to pay for Blaise's education for the 1994-1995 school year. The district court granted relief on the alternative grounds that either Pathway was the educational placement mandated by the "stay-put" provision, 20 U.S.C. § 1415(e)(3), or the injunction was appropriate under the traditional standards for preliminary relief established in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). The Board appeals.

II.

Under the Individuals with Disabilities Education Act (IDEA), the federal government provides qualifying states with funding for the education of disabled children. States such as West Virginia which receive federal funds must "assure[ ] all children with disabilities the right to a free appropriate public education." 20 U.S.C. § 1412(1). A "free appropriate public education" consists of special education and related services tailored to the specific child's needs according to an individualized education program (IEP). See 20 U.S.C. § 1401(18) & (20). Parents who are dissatisfied with the education their child is receiving are entitled to an administrative due process hearing. 20

4

U.S.C. § 1415(b)(2). IDEA permits a party adversely affected by an administrative decision to obtain judicial review and gives courts "broad discretion," School Comm. of Burlington v. Dept. of Educ. of Mass., 471 U.S. 359, 369 (1985), to grant "such relief as the court determines is appropriate," 20 U.S.C. § 1415(e)(2).

The Board contends, however, that the relief available under section 1415(e)(2) is limited by the stay-put provision of IDEA, which states that:

> during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(e)(3). The Board contends that Stockton was not entitled to relief under the stay-put provision because Pathway was not the "then current educational placement" for Blaise, who was being home schooled at the time administrative proceedings commenced. Appellant further suggests that courts are bound to honor the placement dictated by the stay-put provision and therefore may not grant a preliminary injunction under section 1415(e)(2) which establishes a different placement.

The Supreme Court has rejected the Board's reading of sections 1415(e)(2) and (e)(3). "The stay-put provision in no way purports to limit or pre-empt the authority conferred on courts by § 1415(e)(2); indeed, it says nothing whatever about judicial power." Honig v. Doe, 484 U.S. 305, 327 (1988). Instead, section 1415(e)(3) simply creates a rebuttable presumption that the current placement is correct. See id. at 328. In Honig, the Court specifically found that in an appropriate case, a court might grant preliminary injunctive relief removing a dangerous child from his "then current educational placement" in public school pending the outcome of administrative and judicial proceedings. Id. at 327.

5

Furthermore, the Supreme Court has established that a court may require a public school to pay for a private school placement. Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993); Burlington, 471 U.S. 359 (1985). This is so even where the placement is made unilaterally by the parents in contravention of the stay-put provision. See Florence County, 510 U.S. at 15; Burlington, 471 U.S. at 371-72. To order such payment, however, a court must first find that the private placement is appropriate under IDEA and that public placement would not be. See Florence County, 510 U.S. at 9-10, 15; Burlington, 471 U.S. at 369-70. Parents making a unilateral placement run the significant risk that a court ultimately will find against them and they will be left bearing the cost of that placement. Florence County, 510 U.S. at 15; Burlington, 471 U.S. at 373-74.

The record here supports the district court's conclusion that Pathway was an appropriate placement while the public school was not. A "free appropriate public education" is one "sufficient to confer some educational benefit upon the handicapped child," Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 200 (1982), but it must produce more than "some minimal academic advancement." Hall v. Vance County Bd. of Educ., 774 F.2d 629, 636 (4th Cir. 1985). Furthermore, an IEP must be "reasonably calculated to enable the child to receive educational benefits." Rowley, 458 U.S. at 206-07.

Blaise's public school education and the August 1994 IEP fell discernably short of the Rowley standards. The record shows that Blaise actually regressed in public school. His grades and IQ declined sharply, he developed a severe school avoidance problem, and, as the district court found, his hospitalization at Chestnut Ridge was "a direct consequence of the escalating school problems." The August 1994 IEP offered no better prospects. The district court concluded that the school never seriously considered residential placement for Blaise, despite the hearing officer's directive to review all placement options. The court noted that the school applied in June 1994 for funding to place Blaise in the Barbour County schools even though it had not yet completed the eligibility and educational criteria analysis that would determine placement. Most significantly, the district court found that the school was not prepared to provide Blaise with the minimum services required by the May 17 hearing decision. The

6

professionals identified to provide school aversion therapy refused to do so, and none of the staff at the Barbour County schools had received the required training in Blaise's neurological disorder. The one woman whom the school identified as having expertise in Tourette's syndrome was employed full time in another school system. Other than the county school psychologist, every expert who examined Blaise concluded that he should be in a residential setting and that returning him to the public school would be harmful.

The Board complains that the district court failed to give proper deference to the allegedly contrary decisions of the hearing officers. In IDEA cases, however, "courts are required to make an independent decision based on a preponderance of the evidence, while giving due weight to state administrative proceedings." Doyle v. Arlington County Sch. Bd., 953 F.2d 100, 103 (4th Cir. 1991). The court's decision is quite consistent with the administrative finding that public school placement would be appropriate provided that certain services were available for Blaise. The court found that the school was not prepared to provide those services and accordingly held that the public school was not an appropriate placement.

In contrast, Blaise flourished academically at Pathway. He was receiving virtually all A's and B's, his attendance was excellent with no further demonstration of school aversion, and his IQ score had returned to the superior range. The Board, however, complains that a residential placement at Pathway disregards IDEA's preference for mainstreaming. IDEA requires states "to assure that, to the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled." 20 U.S.C. § 1412(5). The Act specifically acknowledges, however, that mainstreaming is not appropriate in a case such as this, where "the nature or severity of the disability is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(5); accord Rowley, 458 U.S. at 181 n.4. Given the statutory admonition that mainstreaming is not appropriate when no educational benefit can be derived thereby, appellant's argument must fail.

On this record, we are unable to conclude that the district court abused its discretion under Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977), in awarding appellee relief. Inas-

7

much as the critical findings here relate to success on the merits, we see no need for the court to have adopted the <u>Blackwelder</u> framework. The district court did, however, make the findings required by <u>Florence County</u> and <u>Burlington</u>, namely, that the public schools failed to provide any educational benefit for Blaise and that the progress Blaise made in the private school setting of Pathway was substantial. Not only were the relevant findings made, but they are solidly grounded in the record. Indeed, the record is replete with evidence that Blaise's attendance problems and grades worsened while he was in the Barbour County school system and that both his personal conduct and academic achievement improved in the more structured environment of Pathway. In view of these findings, it would be remiss to reverse a district court under a statute which affords that court the authority to fashion "such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). As the district court recognized, of course, its findings on the request for preliminary injunctive relief remain subject to further inquiry. Final relief is contingent on the district court's resolution of the merits of Stockton's claim that Barbour County failed to provide Blaise with a "free appropriate public education" and that Pathway has done so.

III.

For the foregoing reasons, the judgment of the district court is

<u>AFFIRMED</u>.