## FLORENCE COUNTY SCHOOL DISTRICT FOUR
### ET AL. *v.* CARTER, A MINOR, BY AND THROUGH
### HER FATHER AND NEXT FRIEND, CARTER

No. 91–1523.   Argued October 6, 1993—Decided November 9, 1993

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Donald B. Ayer* argued the cause for petitioners. With him on the briefs were *Beth Heifetz* and *Bruce E. Davis.*

*Peter W. D. Wright* argued the cause for respondent. With him on the brief was *Nancy C. McCormick.*

*Amy L. Wax* argued the cause for the United States as *amicus curiae* urging affirmance. With her on the brief were *Solicitor General Days, Acting Assistant Attorney General Schiffer, Deputy Solicitor General Wallace, William Kanter,* and *John P. Schnitker.**

JUSTICE O'CONNOR delivered the opinion of the Court.

The Individuals with Disabilities Education Act (IDEA or Act), 84 Stat. 175, as amended, 20 U. S. C. § 1400 *et seq.* (1988 ed. and Supp. IV), requires States to provide disabled children with a "free appropriate public education," § 1401(a)(18). This case presents the question whether a court may order reimbursement for parents who unilaterally withdraw their child from a public school that provides an inappropriate education under IDEA and put the child in a private school that provides an education that is otherwise proper under IDEA, but does not meet all the requirements of § 1401(a)(18). We

---

*Briefs of *amici curiae* urging reversal were filed for the State of Arizona et al. by *J. Joseph Curran, Jr.,* Attorney General of Maryland, and *Andrew H. Baida* and *Joann Goedert,* Assistant Attorneys General, and by the Attorneys General for their respective jurisdictions as follows: *Grant Woods* of Arizona, *Michael J. Bowers* of Georgia, *Richard Ieyoub* of Louisiana, *Michael E. Carpenter* of Maine, *Joseph P. Mazurek* of Montana, *Robert J. Del Tufo* of New Jersey, *Tom Udall* of New Mexico, *Michael F. Easley* of North Carolina, *Heidi Heitkamp* of North Dakota, *Theodore R. Kulongoski* of Oregon, *T. Travis Medlock* of South Carolina, *Mark Barnett* of South Dakota, *Charles Burson* of Tennessee, *R. Paul Van Dam* of Utah, *Stephen D. Rosenthal* of Virginia, and *Joseph B. Meyer* of Wyoming; for the National League of Cities et al. by *Richard Ruda;* and for the National School Boards Association et al. by *August W. Steinhilber, Thomas A. Shannon,* and *Gwendolyn H. Gregory.*

Briefs of *amici curiae* urging affirmance were filed for the National Head Injury Foundation, Inc., by *Craig Denmead* and *Kevin M. Maloney;* for the Learning Disability Association of America et al. by *Mark S. Partin* and *Reed Martin;* and for the National Alliance for the Mentally Ill et al. by *Steven Ney* and *Andrew S. Penn.*

hold that the court may order such reimbursement, and therefore affirm the judgment of the Court of Appeals.

I

Respondent Shannon Carter was classified as learning disabled in 1985, while a ninth grade student in a school operated by petitioner Florence County School District Four. School officials met with Shannon's parents to formulate an individualized education program (IEP) for Shannon, as required under IDEA. 20 U. S. C. §§ 1401(a)(18) and (20), 1414(a)(5) (1988 ed. and Supp. IV). The IEP provided that Shannon would stay in regular classes except for three periods of individualized instruction per week, and established specific goals in reading and mathematics of four months' progress for the entire school year. Shannon's parents were dissatisfied, and requested a hearing to challenge the appropriateness of the IEP. See § 1415(b)(2). Both the local educational officer and the state educational agency hearing officer rejected Shannon's parents' claim and concluded that the IEP was adequate. In the meantime, Shannon's parents had placed her in Trident Academy, a private school specializing in educating children with disabilities. Shannon began at Trident in September 1985 and graduated in the spring of 1988.

Shannon's parents filed this suit in July 1986, claiming that the school district had breached its duty under IDEA to provide Shannon with a "free appropriate public education," § 1401(a)(18), and seeking reimbursement for tuition and other costs incurred at Trident. After a bench trial, the District Court ruled in the parents' favor. The court held that the school district's proposed educational program and the achievement goals of the IEP "were wholly inadequate" and failed to satisfy the requirements of the Act. App. to Pet. for Cert. 27a. The court further held that "[a]lthough [Trident Academy] did not comply with all of the procedures outlined in [IDEA]," the school "provided Shannon an excel-

lent education in substantial compliance with all the substantive requirements" of the statute. *Id.*, at 37a. The court found that Trident "evaluated Shannon quarterly, not yearly as mandated in [IDEA], it provided Shannon with low teacher-student ratios, and it developed a plan which allowed Shannon to receive passing marks and progress from grade to grade." *Ibid.* The court also credited the findings of its own expert, who determined that Shannon had made "significant progress" at Trident and that her reading comprehension had risen three grade levels in her three years at the school. *Id.*, at 29a. The District Court concluded that Shannon's education was "appropriate" under IDEA, and that Shannon's parents were entitled to reimbursement of tuition and other costs. *Id.*, at 37a.

The Court of Appeals for the Fourth Circuit affirmed. 950 F. 2d 156 (1991). The court agreed that the IEP proposed by the school district was inappropriate under IDEA. It also rejected the school district's argument that reimbursement is never proper when the parents choose a private school that is not approved by the State or that does not comply with all the terms of IDEA. According to the Court of Appeals, neither the text of the Act nor its legislative history imposes a "requirement that the private school be approved by the state in parent-placement reimbursement cases." *Id.*, at 162. To the contrary, the Court of Appeals concluded, IDEA's state-approval requirement applies only when a child is placed in a private school by public school officials. Accordingly, "when a public school system has defaulted on its obligations under the Act, a private school placement is 'proper under the Act' if the education provided by the private school is 'reasonably calculated to enable the child to receive educational benefits.'" *Id.*, at 163, quoting *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty.* v. *Rowley*, 458 U. S. 176, 207 (1982).

The court below recognized that its holding conflicted with *Tucker* v. *Bay Shore Union Free School Dist.*, 873 F. 2d 563,

568 (1989), in which the Court of Appeals for the Second Circuit held that parental placement in a private school cannot be proper under the Act unless the private school in question meets the standards of the state education agency. We granted certiorari, 507 U. S. 907 (1993), to resolve this conflict among the Courts of Appeals.

## II

In *School Comm. of Burlington* v. *Department of Ed. of Mass.*, 471 U. S. 359, 369 (1985), we held that IDEA's grant of equitable authority empowers a court "to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." Congress intended that IDEA's promise of a "free appropriate public education" for disabled children would normally be met by an IEP's provision for education in the regular public schools or in private schools chosen jointly by school officials and parents. In cases where cooperation fails, however, "parents who disagree with the proposed IEP are faced with a choice: go along with the IEP to the detriment of their child if it turns out to be inappropriate or pay for what they consider to be the appropriate placement." *Id.*, at 370. For parents willing and able to make the latter choice, "it would be an empty victory to have a court tell them several years later that they were right but that these expenditures could not in a proper case be reimbursed by the school officials." *Ibid.* Because such a result would be contrary to IDEA's guarantee of a "free appropriate public education," we held that "Congress meant to include retroactive reimbursement to parents as an available remedy in a proper case." *Ibid.*

As this case comes to us, two issues are settled: (1) the school district's proposed IEP was inappropriate under IDEA, and (2) although Trident did not meet the § 1401(a)(18) requirements, it provided an education other-

wise proper under IDEA. This case presents the narrow question whether Shannon's parents are barred from reimbursement because the private school in which Shannon enrolled did not meet the § 1401(a)(18) definition of a "free appropriate public education."* We hold that they are not, because § 1401(a)(18)'s requirements cannot be read as applying to parental placements.

Section 1401(a)(18)(A) requires that the education be "provided at public expense, under public supervision and direction." Similarly, § 1401(a)(18)(D) requires schools to provide an IEP, which must be designed by "a representative of the local educational agency," 20 U. S. C. § 1401(a)(20) (1988 ed., Supp. IV), and must be "establish[ed]," "revise[d]," and "review[ed]" by the agency, § 1414(a)(5). These requirements do not make sense in the context of a parental placement. In this case, as in all *Burlington* reimbursement cases, the parents' rejection of the school district's proposed IEP is the very reason for the parents' decision to put their child in a private school. In such cases, where the private placement has necessarily been made over the school district's objection, the private school education will not be under "public supervision and direction." Accordingly, to read the § 1401(a)(18) requirements as applying to parental placements would effectively eliminate the right of unilateral withdrawal recognized in *Burlington*. Moreover, IDEA was intended to ensure that children with disabilities receive an education that is both appropriate and free. *Burlington, supra*, at 373. To read the provisions of § 1401(a)(18) to bar

---

*Section 1401(a)(18) defines "free appropriate public education" as "special education and related services that—

"(A) have been provided at public expense, under public supervision and direction, and without charge,

"(B) meet the standards of the State educational agency,

"(C) include an appropriate preschool, elementary, or secondary school education in the State involved, and

"(D) are provided in conformity with the individualized education program . . . ."

reimbursement in the circumstances of this case would defeat this statutory purpose.

Nor do we believe that reimbursement is necessarily barred by a private school's failure to meet state education standards. Trident's deficiencies, according to the school district, were that it employed at least two faculty members who were not state certified and that it did not develop IEP's. As we have noted, however, the § 1401(a)(18) requirements—including the requirement that the school meet the standards of the state educational agency, § 1401(a)(18)(B)—do not apply to private parental placements. Indeed, the school district's emphasis on state standards is somewhat ironic. As the Court of Appeals noted, "it hardly seems consistent with the Act's goals to forbid parents from educating their child at a school that provides an appropriate education simply because that school lacks the stamp of approval of the same public school system that failed to meet the child's needs in the first place." 950 F. 2d, at 164. Accordingly, we disagree with the Second Circuit's theory that "a parent may not obtain reimbursement for a unilateral placement if that placement was in a school that was not on [the State's] approved list of private" schools. *Tucker*, 873 F. 2d, at 568 (internal quotation marks omitted). Parents' failure to select a program known to be approved by the State in favor of an unapproved option is not itself a bar to reimbursement.

Furthermore, although the absence of an approved list of private schools is not essential to our holding, we note that parents in the position of Shannon's have no way of knowing at the time they select a private school whether the school meets state standards. South Carolina keeps no publicly available list of approved private schools, but instead approves private school placements on a case-by-case basis. In fact, although public school officials had previously placed three children with disabilities at Trident, see App. to Pet. for Cert. 28a, Trident had not received blanket approval from

the State. South Carolina's case-by-case approval system meant that Shannon's parents needed the cooperation of state officials before they could know whether Trident was state approved. As we recognized in *Burlington*, such cooperation is unlikely in cases where the school officials disagree with the need for the private placement. 471 U. S., at 372.

### III

The school district also claims that allowing reimbursement for parents such as Shannon's puts an unreasonable burden on financially strapped local educational authorities. The school district argues that requiring parents to choose a state-approved private school if they want reimbursement is the only meaningful way to allow States to control costs; otherwise States will have to reimburse dissatisfied parents for any private school that provides an education that is proper under the Act, no matter how expensive it may be.

There is no doubt that Congress has imposed a significant financial burden on States and school districts that participate in IDEA. Yet public educational authorities who want to avoid reimbursing parents for the private education of a disabled child can do one of two things: give the child a free appropriate public education in a public setting, or place the child in an appropriate private setting of the State's choice. This is IDEA's mandate, and school officials who conform to it need not worry about reimbursement claims.

Moreover, parents who, like Shannon's, "unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Burlington, supra,* at 373–374. They are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and that the private school placement was proper under the Act.

Finally, we note that once a court holds that the public placement violated IDEA, it is authorized to "grant such

relief as the court determines is appropriate." 20 U. S. C. § 1415(e)(2). Under this provision, "equitable considerations are relevant in fashioning relief," *Burlington*, 471 U. S., at 374, and the court enjoys "broad discretion" in so doing, *id.*, at 369. Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required. Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable.

Accordingly, we affirm the judgment of the Court of Appeals.

*So ordered.*