Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El Departamento de Educación (el Departamento) solicita la revisión de una resolución emitida el 18 de mayo de 1998 por una Jueza Administrativa de Educación Especial, en la cual se ordenó al Departamento reembolsar al Hogar Rafaela Ybarra, Inc. (el Hogar), la cantidad de $9,600.00, por las evaluaciones, matrícula, mensualidades y transportación pagados por el Hogar al Instituto Modelo de Enseñanza Individualizada (IMEI), por los servicios provistos por dicha institución para la educación de las estudiantes recurridas (las estudiantes).
Por los fundamentos que expresamos a continuación, procedemos a expedir el auto de revisión solicitado y confirmar la resolución recurrida.
I
Las estudiantes recurridas en el caso de epígrafe son residentes del Hogar Rafaela Ybarra, Inc., una organización sin fines de lucro que ofrece servicios residenciales a niñas y jóvenes con necesidades sociales, educativas y económicas. El Hogar pertenece a las hermanas religiosas Angeles Custodios, quienes son propietarias también del Colegio Angeles Custodios, institución educativa en la que se provee enseñanza a particulares y donde además reciben normalmente su educación las residentes del Hogar. l¿as niñas son referidas al Hogar bien por sus familiares, por el Departamento de la Familia o por otras entidades.
Las estudiantes en el caso de epígrafe se encuentran bajo la custodia física del Hogar. Las cuatro poseen necesidades especiales en el área educativa, por presentar dificultades tales como retardo mental leve, problemas emocionales o en el área del habla, rezago escolar, y otros. Por tal situación, las estudiantes no pueden asistir al Colegio Angeles Custodios como las otras residentes del Hogar, pues dicho colegio no está preparado para responder a las necesidades particulares que ellas presentan.
*997 Dada esa situación, por asesoramiento del personal del Hogar, las Hermanas inscribieron a tres de las estudiantes en el Programa de Educación Especial del Departamento de Educación, en fechas del 5 de junio de 1996, 15 de enero de 1997 y 17 de junio de 1997. Como parte del proceso de registro, el Hogar entregó copia al Departamento de las evaluaciones previamente administradas a cada una de las estudiantes. Con posterioridad al registro, transcurrieron más de sesenta (60) días en cada caso sin que el Departamento tomara ninguna acción en ninguno de los casos, a pesar de las diversas gestiones que realizó el Hogar.
En septiembre de 1997, el Hogar, ante la inactividad del Departamento y dado el hecho de que las niñas no estaban acudiendo a la escuela, matriculó a tres de las estudiantes en el Instituto Modelo de Enseñanza Individualizada (IMEI), luego de ser evaluadas por dicha institución. El Hogar no informó al Departamento su determinación de matricular a las estudiantes en una escuela privada.
La revisión que nos ocupa tiene su origen en cuatro querellas presentadas por el Hogar el 12 de noviembre de 1997, en representación de las estudiantes, por la inactividad del Departamento de Educación. Con excepción de una de las estudiantes que había sido evaluada en Terapia Ocupacional a los cinco (5) meses de su registro, el Departamento no había tomado ninguna acción en relación a las cuatro estudiantes, a pesar de que en uno de los casos, habían transcurrido más de diecisiete (17) meses desde el registro. En las querellas, el Hogar reclamó que se completaran las evaluaciones de cada estudiante, se prepararan o revisaran los PEI, se le ofrecieran a las estudiantes los servicios pertinentes, y que se reembolsaran los gastos de matrícula y educación de las tres niñas que asistían al IMEI.
Después de varios incidentes procesales para la consolidación de las cuatro querellas en una sola vista administrativa, el 10 de diciembre de 1997 comenzaron a ventilarse las referidas querellas. En dicha vista las partes estipularon los siguientes puntos que resumimos: (1) el Departamento nombraría una maestra itinerante para las cuatro estudiantes y otras tres niñas del Hogar; brindándose dicho servicio en el Colegio Angeles Custodios; (2) el Departamento completaría las evaluaciones pendientes en ciertas fechas que se informaron en la vista; (3) el Departamento comenzaría a brindar servicios de Terapia del Habla, a partir de una fecha que informó; (4) las evaluaciones estarían terminadas para mediados de enero cuando se prepararían los PEI de las estudiantes y (5), la vista administrativa continuaría el 2 de febrero con el único objetivo de presentar la prueba y adjudicar la controversia sobre el reembolso de lo pagado a IMEI.
Antes de la continuación de la vista, el 29 de enero de 1998, la representación legal de las estudiantes presentó una moción Informativa y Solicitando Remedios, pues el Departamento había incumplido parte de lo estipulado el 10 de diciembre anterior.
El 2 de febrero de 1998, en la continuación de la vista, se discutió dicha moción. La Juez Administrativa determinó que si para el viernes 6 de febrero el Departamento no cumplía con lo estipulado el 10 de diciembre, se matricularía a las estudiantes en IMEI para el segundo semestre del año escolar. Con relación a los dineros pagados a IMEI por el primer semestre, no hubo discusión en dicha vista sobre la prueba documental presentada, por lo que la controversia quedó limitada a si procedía o no el reembolso, en un caso como este, en que el Hogar no había notificado al Departamento sobre la inscripción de las tres estudiantes en la escuela privada antes de tomar dicha acción.
Con posterioridad a la vista del 2 de febrero, las partes presentaron varias mociones a favor y otras en contra de la solicitud de reembolso. El 18 de mayo de 1998 la Jueza Administrativa emitió la Resolución objeto de la presente revisión. El 8 de junio de 1998, el Departamento presentó una moción de reconsideración. El 22 de junio de 1998, las estudiantes presentaron una moción en oposición a solicitud de reconsideración. La Jueza Administrativa no tomó acción alguna sobre la moción de reconsideración.
El 23 de julio de 1998, el Departamento presentó un recurso de revisión ante este foro. El 2 de septiembre de 1998, este Tribunal emitió una orden para que las estudiantes expresaran su posición *998 sobre el recurso de revisión presentado, orden que fue archivada en autos el 5 de octubre de 1998. El 27 de octubre de 1998, las estudiantes presentaron una moción en oposición al recurso solicitado.
En su solicitud de revisión, el Departamento solicita que se revoque la resolución de la jueza administrativa y se releve, por lo tanto, al Departamento de Educación de la obligación de reembolsar al Hogar Rafaela Ybarra los gastos incurridos por el Hogar al procurar los servicios del IMEI para las tres estudiantes en cuestión. Entiende el Departamento que erró la juez administrativa al tomar dicha determinación, toda vez que el Hogar no cumplió con el requisito de notificar al Departamento antes de ubicar a las estudiantes en una institución privada.
En su oposición a la solicitud de revisión, las estudiantes argumentan que no puede negarse el reembolso por la falta de notificación, porque la ley federal requiere, entre las garantías procesales que incluye, que, en primer lugar, esas garantías sean notificadas por escrito a los padres o guardianes, y, en segundo lugar, que se incluya dentro de esas garantías los requisitos que deben cumplir los padres para la ubicación unilateral de sus hijos en una institución privada.
Después de examinar la legislación y reglamentación aplicables, y el expediente del caso de autos, concluimos que tienen razón las estudiantes.
n
Uno de los propósitos principales de la ley federal denominada Individual with Disabilities Education Act (IDEA, por sus siglas en inglés), 20 U.S.C.A. See. 1400 y ss. es, entre otros, asegurar a todos los niños y niñas con necesidades especiales una educación pública y apropiada que haga énfasis en proveerles la educación especial y los servicios relacionados diseñados para atender sus necesidades particulares, y los prepare para trabajar y llevar una vida independiente; asegurar que se protejan los derechos de los niños y niñas con impedimentos y los de sus padres o guardianes; ayudar a los estados, comunidades, y agencias gubernamentales a proveer una educación adecuada para dichos niños; y evaluar y asegurar la efectividad de los esfuerzos para educar adecuadamente a los niños con impedimentos. 20 U.S.C.A. see. 1400 (d). Esta ley federal fue objeto de enmiendas sustanciales en 1997, mediante la Ley Pública Núm. 105-17 del 4 de junio.
En Puerto Rico, la ley hermana a IDEA es la Ley Núm. 51 de 7 de junio de 1996,. conocida como la Ley de Servicios Educativos Integrales para Personas con Impedimentos, 18 L.P.R.A. See. 1351 y ss. 
La sección de la ley aplicable a la revisión que nos ocupa es la Sección 1412, que condiciona la elegibilidad del estado a recibir los fondos que provee la ley a que dicho estado demuestre el haber puesto en vigor medidas de política pública que garanticen el cumplimiento de una serie de condiciones, tales como la necesidad de proveer una "educación pública y adecuada" a todos los niños con impedimento, excepto por ciertos casos (inciso 1); que el Estado establezca como meta el proveer una completa oportunidad educativa a dichos niños (inciso 2); que se desarrollen programas para identificar, evaluar y proveer los servicios necesarios a todos los niños con impedimentos (inciso 3), y otros.
Entre esas condiciones, el inciso 10 incluye disposiciones específicas sobre los niños en escuelas privadas, 20 U.S.C.A. see. 1412 (a) (10). Como parte de dicho inciso, en la parte (C), se incluyen las disposiciones aplicables para el pago por los servicios educativos de niños inscritos en escuelas privadas sin el previo consentimiento de la agencia:

"C) Payment for Education of children enrolled in private schools without consent or referral by the public agency.

(i) In general. - Subject to subparagraph (A) this subchapter does not require a local educational agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropiate public education available to the child and the parents elected to place the child in such private school or facility.

(ii) Reimbursement for private school placement. - If the parents of a child with a disability, who *999 previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropiate public education available to the child in- a timely manner prior to that enrollment." 20 U.S.C.A. sec. 1412 (a) (10) (C) (Enfasis nuestro).
Como vemos en el inciso (i) citado, la norma general es que la agencia pública no está obligada a pagar por los costos relacionados con la educación y otros servicios relacionados en una institución privada, si esa agencia puso a la disposición del niño "una educación pública y apropiada" y los padres optan por la alternativa privada. Como excepción a dicha norma general, el segundo párrafo citado, el párrafo (ii), faculta a un tribunal o juez administrativo a determinar que sí procede el reembolso, por excepción a la norma general antes citada, cuando dicho funcionario determine que la agencia no cumplió con esa obligación básica de proveer una educación pública y apropiada con prontitud - in a timely manner-.
En los párrafos (iii) y (iv) se incluyen disposiciones que matizan esa facultad del tribunal o juez administrativo de determinar en qué ocasiones puede denegar o reducir el importe del reembolso.
La sección (iii) - "Limitaciones al reembolso" enumera ciertos casos en que autoriza al tribunal o juez administrativo a reducir o denegar el reembolso: (I) (aa) si en la más reciente reunión para discutir el PEI los padres no informaron a la agencia su inconformidad con el plan propuesto y su determinación de matricular al estudiante en una institución privada; (I) (bb), si diez días laborables antes de matricular al estudiante en una institución privada los padres no notificaron por escrito a la agencia "la información descrita en el párrafo "aa" (el anterior) - es decir, que no se le informó por escrito la inconformidad de los padres con la ubicación propuesta y su decisión de matricular al niño en una escuela privada; (II), si, con anterioridad a la remoción del estudiante de la escuela pública, la agencia notificó a los padres que el niño sería evaluado, pero los padres no permitieron que dicha evaluación se realizara; y (III), si un tribunal determina que la actuación de los padres fue irrazonable. 20 U.S.C.A. sec. 1412 (a) (10) (C) (iii).
La sección (iv), por el contrario, tiene el efecto de reducir el alcance de las limitaciones anteriores, al establecer cuatro situaciones en las cuales no se reducirá o denegará el reembolso aunque no se haya cumplido con el requisito de notificación del inciso (iii)(I) indicado en el párrafo anterior: (I) cuando los padres son analfabetas o no saben inglés; (II) cuando el cumplimiento con el requisito de la notificación pudiese ocasionar al estudiante grave daño físico o emocional; (El) si la escuela evitó que los padres hicieran la notificación; o (IV), si los padres no fueron apercibidos, a base de las garantías procesales que concede la propia ley IDEA, del requisito de notificación de la cláusula (iii) (I), es decir, de que tenían que informar su inconformidad con la propuesta educativa de la agencia y su decisión de trasladar al estudiante a una institución privada. 20 U.S.C.A. sec. 1412(a)(10)(C)(iv).
Esas garantías procesales están incluidas en la sección 1415 de IDEA. El párrafo (d) de dicha sección establece ciertos requisitos sobre el tipo y contenido de la notificación que tiene que realizar la agencia, para informar a los padres sobre las garantías procesales que la ley establece. El inciso (d) (2) (H), en específico, señala que la notificación a los padres sobre las garantías procesales tiene que incluir "los requisitos para la ubicación unilateral de niños en escuelas privadas, por los padres, a expensas del erario público". 20 U.S.C.A. sec. 1415(d) (2) (H) (Traducción nuestra).
Entre las secciones enmendadas en 1997 se encuentra la sección 1412, a la cual se le incorporaron las disposiciones que hemos citado del párrafo (C). De acuerdo al informe legislativo de la Cámara de Representantes, House Report No.105-95, a la pág. 92 (1997), el objetivo de la inclusión de dicho párrafo fue aclarar el alcance de la responsabilidad de las agencias con los niños con impedimentos que son ubicados por los padres en escuelas privadas. Entendía el Congreso que las enmiendas resolvían una serie de controversias que habían sido objeto de númerosos litigios en los tribunales. Para ello, entre otros puntos, limitaban el total de fondos que podían ser pagados a instituciones privadas a base de una fórmula proporcional. En ese mismo espíritu, condicionaban el reembolso a los padres por los gastos incurridos en instituciones privadas a ciertas ocasiones, entre ellas:
*1000 "...when a due process hearing officer or judge determines that a public agency has not made a free appropiate public education available to the child, in a timely manner, prior to the parents enrolling the child in that placement without the public agency’s consent. [ ] Previously, the child must have had received special education and related services under the authority of a public agency." House Report No. 105-95, a la pág. 93.
En dicho informe, se alude también a los factores que afectan el posible reembolso, especificándose entre ellos, el que no puede ocurrir la reducción o denegación del reembolso "si los padres no han sido notificados en relación a las posibles consecuencias del incumplimiento" con el requisito de notificación a la agencia. House Report No. 105-95, a la pág. 92.
Con anterioridad a la aprobación de las enmiendas de 1997, el Tribunal Supremo de Estados Unidos había adjudicado varios casos en que concedía reembolso a los padres de niños con impedimentos. En School Comm. of the Town of Burlington, Mass. et al. v. Department of Educ. of Mass, et al., 471 U.S. 359, 369 (1985), el Tribunal reconoció que los remedios administrativos pueden tomar tiempo, y que en ocasiones, un padre o madre insatisfechos con la alternativa que le provee la agencia educativa se encuentra en el dilema de aceptar la alternativa propuesta o pagar de su propio peculio lo que ese padre considera es una mejor alternativa, si el tribunal determina que la ubicación seleccionada por el padre es apropiada, y que la propuesta por la agencia educativa no lo es. Posteriormente, en Florence County School Dist. Four v. Carter, 510 U.S. 7, 14-15 (1993), el Tribunal determinó que si un tribunal federal determina (1) que el estudiante necesitaba servicios educativos especiales, (2), que el PEI desarrollado por la agencia era inapropiado, (3) que la ubicación unilateral hecha por los padres era apropiada, y, (4) que el costo de la alternativa privada era razonable, el tribunal puede ordenar el reembolso a los padres.
Las enmiendas de 1997, posteriores a los casos citados, establecen las condiciones —o limitaciones— que quiso imponer el Congreso, para limitar el alcance de los casos citados. Los párrafos añadidos a la legislación federal entre ellos, la totalidad del párrafo (C) citado, no aluden a los requisitos específicos establecidos por Burlington, supra, o Carter, supra, sino que establecen los requisitos específicos que hemos enumerado.
En el caso de autos, por lo tanto, es la legislación federal la que establece los requisitos a tomarse en cuenta para decidir si procede o no el desembolso. Como hemos visto, no procedería el reembolso si el Departamento hubiese provisto a las estudiantes una alternativa de "una educación pública y adecuada", y el Hogar hubiese optado por la ubicación en la institución privada. El Departamento, sin embargo, al no tomar acción "con prontitud" con posterioridad al registro de las estudiantes, falló en su deber ministerial de proveer a las estudiantes esa educación pública y adecuada que requiere la ley.
En Puerto Rico, la Ley Núm. 51 de 7 de junio de 1996 dispone en el artículo 4, entre los derechos de las personas con impedimentos, el de "ser evaluado con prontitud por un equipo multidisciplinario, que tome en consideración sus áreas de funcionamiento y necesidades, de modo que pueda recibir los servicios educativos y relacionados indispensables para su educación de acuerdo al programa educativo individualizado para el desarrollo óptimo de sus potencialidades". 18 L.P.R.A. sec. 1353 (5).
La reglamentación federal y estatal han definido a su vez en qué consiste esa prontitud. Como indica la Juez Administrativa en su resolución, la "prontitud" a la que se refiere la Ley Núm. 51 está definida por la sección 300.343 de la reglamentación federal aplicable a IDEA. Esta indica que debe llevarse a cabo una reunión para el desarrollo del PEI dentro de los treinta (30) días calendario de la determinación de elegibilidad. El plazo para determinar dicha elegibilidad, como señala la resolución recurrida, fue establecido en un máximo de treinta (30) días después del Registro, a base de la sentencia de Injunction preliminar dictada en el caso de Rosa Lydia Vélez v. María Socorro Lacot, Civil Núm. KPE-80-1738 (907) El Departamento reconoce dicho término de los sesenta (60) días en el Manual de Procedimientos para Educación Especial. El inciso B de dicho manual, a la pág. 15, indica que la evaluación del niño debe llevarse a cabo en un período de treinta (30) días calendario subsiguiente a la fecha del registro; el inciso 2 (a), a la pág. 45, dispone que el PEI se preparará dentro de treinta (30) días calendario subsiguientes a la determinación de elegibilidad.
*1001 En cuanto al requisito de la notificación, en su escrito de solicitud de revisión, el Departamento argumenta que no procede el reembolso porque el Hogar no informó al Departamento su decisión previo a la matrícula de las estudiantes en el Instituto. No procede esa argumentación, pues el Departamento, a su vez, no cumplió con el requisito establecido en el inciso (iii) (IV) de la referida sección 20 U.S.C.A. sec. 1412(a) (10) (C). El documento "Derechos de los Padres" que el Departamento indica haber entregado al Hogar es una enumeración de los derechos básicos de los padres, en relación a reuniones, copia de documentos, derecho a participar en vistas públicas o a ser representado por otras personas, y otros. No alude al requisito de notificar al Departamento de los padres decidir optar por la alternativa de una escuela privada, ni las consecuencias legales de dicha acción.
En el caso de autos, por lo tanto, no se deduce del expediente que el Hogar haya sido apercibido sobre la obligación de notificar al Departamento antes de matricular a las estudiantes en IMEI. El Departamento no puede argumentar, por lo tanto, la falta de notificación de la determinación del Hogar, pues la legislación federal específicamente excluye de las limitaciones al reembolso los casos en que la agencia no informó a los padres de la obligación de éstos de notificar. En la resolución que nos ocupa, la Juez Administrativa actúa a nuestro entender conforme a la facultad básica que le concede la legislación federal. Examina en primer lugar si la agencia actuó con prontitud, y verifica a continuación si aplican al caso algunas de las excepciones provistas por las secciones (ii) y (iii) del artículo citado.
Los citados artículos suponen todos una situación básica —el hecho de que la agencia ha realizado una evaluación básica y ha desarrollado un plan de enseñanza individualizada para ese niño--. En este caso, la agencia el Departamento de Educación había faltado a su deber ministerial al no evaluar a las niñas ni desarrollar el programa educativo individualizado que requiere la ley. Esta impone el requisito de notificación cuando los padres no están conformes con las alternativas, el curso de acción recomendado por la agencia para el tratamiento particular de ese niño. En este caso, sin embargo, la agencia no había cumplido con el requisito básico, con el primer paso de su deber.
m
La interrogante que resta por responder es si lo que debió haber hecho el Hogar fue presentar una querella ante el Departamento de Educación, para reclamar precisamente la falta de éste de cumplir con su deber ministerial de proveer de una manera pronta una alternativa educativa adecuada a las estudiantes, en lugar de haberlas matriculado en una institución privada y solicitar posteriormente, como parte de una querella administrativa, el reembolso por los gastos incurridos.
Entendemos que la propia ley federal provee expresamente para que un padre o guardián opte por la segunda alternativa. En primer lugar, la ley provee ambos remedios, la posibilidad de solicitar el reembolso, que ya hemos visto, y la posibilidad de la presentación de la querella. De hecho, dicha ley requiere, como uno de los salvaguardas procesales que tiene que establecer el Estado, que se ofrezca "la oportunidad de presentar querellas con respecto a cualquier asunto relacionado con la determinación de elegibilidad, evaluación, o ubicación educativa del niño, o la provisión de una educación pública adecuada para dicho niño". 20 U.S.C.A. sec. 1415 (b) (6). La ley federal no condiciona la solicitud de reembolso a la previa presentación de una querella; permite de hecho, que sea un proceso administrativo, y no solamente el tribunal, el que conceda el reembolso.
La doctrina de agotar los remedios no es, por lo tanto, de aplicación en el caso de autos. Evidentemente, la ley federal IDEA, al incluir disposiciones que permiten en ciertos casos el reembolso por gastos incurridos en educación privada cuando la agencia estatal no ha provisto prontamente una alternativa adecuada, provee precisamente para que los padres ubiquen al niño o niña en la institución de su preferencia en tanto se dilucidan los aspectos administrativos. El padre que toma esa decisión lo hace, como indican los casos de Burlington, supra, y Carter, supra, a su propio riesgo, porque será una decisión administrativa o judicial posterior la que determine si procede o no el reembolso.
Por todo lo antes expresado, este Tribunal expide el auto de revisión y confirma la resolución recurrida. *1002 Lo acordó el Tribunal y lo certifica la Señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General