**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-4841

_____

N.M.,
A minor, by and through his parents;
M.M.;
L.M., and on their own behalf,
                                                    Appellants

v.

THE SCHOOL DISTRICT OF PHILADELPHIA

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 08-cv-01162)
District Judge:  Honorable Joseph E. Irenas

_____

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2010

_____

Before: SLOVITER, BARRY and SMITH, Circuit Judges

(Opinion Filed:  September 20, 2010)

_____

OPINION

_____

BARRY, Circuit Judge

        L.M. and M.M., individually and on behalf of their minor son, N.M., (collectively

"Appellants"), appeal the District Court's judgment granting the School District of

Philadelphia's ("District") motion for judgment on the administrative record. We will affirm.

I.

Because we write solely for the parties, we discuss only the facts relevant to our analysis.

When this dispute arose in 2007, N.M. was eight years old and suffered from a pervasive development disorder that caused him to be challenged in his language skills and auditory processing. He also had socialization, attentiveness, and distractibility impairments. He spent his first two years of school at Stratford Friends School ("ASFS"), a private school for students with disabilities, typically language-based learning disabilities.

In March 2007, a full auditory processing battery was completed. Recommendations included using preferential seating and slow, clear speech; multi-modal learning strategies that present information in ways other than audition only; and repetition and redundancy. In April 2007, Dr. Leonard Auritt, a school psychologist, evaluated N.M. Dr. Auritt recommended, among other things, that N.M. be provided support to develop his expressive language skills; demonstrations, modeling, and guided practice; interaction with nonhandicapped students; and "intensive multi-sensory, structured, language-based instruction that offers [N.M.] rigorous instruction commensurate with his average ability to learn." (A219.) According to Dr. Auritt, "[r]emoving [N.M.] from a regular school environment may be counterproductive to

2

developing age appropriate social skills."  (A218.)

With those reports, and others, as a backdrop, the District proposed an Individualized Education Program ("IEP") for N.M.'s second grade, 2007-08 school year that split his instructional time between a special education learning support classroom and a regular education classroom.  In both classrooms, N.M would receive a one-to-one assistant to help with transitioning, distractibility, and language processing. The IEP provided for a "multisensory instructional program moving step by step from simple to more complex material in a sequential, logical manner through visual, auditory, kinesthetic, and tactile strategies and approaches."  (A232.)  Other accommodations included small group instruction; use of kinesthetics in decoding practice; preferential seating; structured peer interaction opportunities; visual supports; rephrasing instructions; verbal prompting; modeling; slower rate of speech; and repeat directions.

Appellants rejected the proposed IEP, requested a due process hearing, and enrolled N.M. in SFS for the 2007-08 school year.  The Hearing Officer concluded that N.M. was not eligible for tuition reimbursement because the IEP provided a free appropriate public education ("FAPE"), and, in the alternative, because SFS was an inappropriate placement due to its failure to comply with the Individuals with Disabilities Education Act's ("IDEA") least restrictive environment requirement.  The Special Education Appeals Panel affirmed, finding the IEP appropriate.

Appellants filed an action in federal court seeking tuition reimbursement.  After admitting additional evidence not admitted at the due process hearing, the District Court

granted the District's motion for judgment on the administrative record and denied

Appellants' motion for summary judgment. The Court concluded that the IEP provided

N.M. with a FAPE and, in the alternative, that placement at SFS was not the least

restrictive environment.[1]

II.

A.

Where a state has a two-tiered administrative structure, the federal court begins its

review with the appellate opinion. *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 528-29 (3d

Cir. 1995). A district court reviews the administrative determination under a modified *de*

*novo* standard.[2] *L.E. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006). Factual

findings are based on a preponderance of the evidence with "due weight" afforded to the

agency's determinations. *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199

---

[1] The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] Appellants contend that the District Court should have reviewed this matter *de novo*, rather than under the modified *de novo* standard, due to the Hearing Officer's failure to include all exhibits in the administrative record. However, any purported error is of no moment for two reasons. First, the District Court properly supplemented the administrative record with the exhibits introduced at the due process hearing. *See Oberti v. Bd. of Educ. of Clementon Sch. Dist.*, 995 F.2d 1204, 1220 (3d Cir. 1993). Second, the District Court noted that "even under a *de novo* standard, the result would be the same." (A11.) We see no reason to deviate from our traditional standard of review and, even if we did, it would not alter our decision. *See S.H. v. State-Operated Sch. Dist. of Newark*, 336 F.3d 260, 271 (3d Cir. 2003) ("Even if [a] [d]istrict [c]ourt applied the wrong standard of review, we may still uphold its decision if correct under the appropriate standard of review.").

4

(3d Cir. 2004).  We exercise plenary review over questions of law.  *Ramsey Bd. of Educ.*, 435 F.3d at 389.  Where, as here, a district court supplements the administrative record, we review factual findings for clear error.  *Oberti*, 995 F.2d at 1220.

B.

Appellants seek reimbursement of the costs incurred from the unilateral placement of N.M. in SFS.  *See* 20 U.S.C. § 1412(a)(10)(C)(i)-(ii).  Reimbursement of tuition is appropriate where both "the public placement violated IDEA and . . . the private school placement was proper under the [IDEA]."  *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (1993).  Appellants argue that the proposed IEP did not provide N.M. with a FAPE because it did not provide full-day, small group multisensory structured language based instruction from sufficiently trained teachers.  A school district provides a FAPE by designing and administering an IEP "reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential."  *Shore Reg'l High Sch. Bd. of Ed.*, 381 F.3d at 198 (quotation omitted).  Here, the District Court concluded that N.M. would receive meaningful educational benefits from the proposed IEP.  (A19.)  We agree.

The proposed IEP provides for multisensory structured language based instruction to be provided across all educational environments throughout the day by two special education teachers, one regular education teacher, and a one-to-one assistant, all of whom were, or were to be, trained in multisensory structured language based instruction.  Other modifications and accommodations also addressed N.M.'s needs, such as preferential

5

seating, small group instruction, use of slower speech, repetitive instructions, and visual supports. Moreover, the proposed IEP provides for social interaction by N.M. with non-disabled peers. Accordingly, the District Court did not clearly err in concluding that the proposed IEP was reasonably calculated to provide meaningful educational benefits.[3]

## C.

Appellants also argue that N.M.'s IEP is procedurally flawed because it lacks annual goals and short-term objectives responsive to his auditory processing delay, inattentiveness, distractibility, and social skills deficit. A procedural violation of the IDEA is actionable only if the purported violation impedes the child's right to a FAPE, significantly impedes the parents' participation rights, or causes a deprivation of benefits. *See Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525-26 (2007) (citing 20 U.S.C. § 1415(f)(3)(E)). Because the proposed IEP provides a FAPE and because Appellants have not demonstrated any impediment of their participation or deprivation of educational benefits, we reject this contention.[4]

## III.

We will affirm the order of the District Court.

---

[3] In light of this holding, we need not address the District Court's alternative rationale.

[4] We also reject Appellants' claim for attorneys' fees given that they are not prevailing parties. *See* 20 U.S.C. § 1415(i)(3)(B).