**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-2731

_____

C. W., a minor, by and through her parent, Louise W.;
L. W., adult individually, and on her own behalf,

Appellants

v.

THE ROSE TREE MEDIA SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:03-cv-06051)
District Judge:  Hon. R. Barclay Surrick

Submitted Under Third Circuit LAR 34.1(a)
September 23, 2010

Before: MCKEE, Chief Judge, and AMBRO and CHAGARES, Circuit Judges.

(Filed: September 27, 2010)

_____

OPINION

_____

CHAGARES, Circuit Judge.

        C.W. and L.W. appeal from a final judgment of the United States District Court for

the Eastern District of Pennsylvania that dismissed their lawsuit brought under the

Individuals with Disabilities Education Act ("IDEA"). For the reasons set forth below, we will affirm the District Court's grant of a Motion for Judgment on the Administrative Record in favor of the Rose Tree Media School District ("the District").

I.

Because we write only for the benefit of the parties, we will only briefly recite the facts. C.W. attended Agnes Irwin School, a private school for girls, from elementary school until just before the end of her 9th grade year. Due to problems associated with Attention Deficit Hyperactivity Disorder ("ADHD"), she withdrew on April 30, 2001. On May 4, 2001, C.W. enrolled in the District, although she attended Upattinas School and Resource Center, a private school, for the remainder of the 2000-2001 school year while she awaited the results of the District's evaluation. On July 4, 2001, C.W. applied to the Academy at Swift River, a private school in Massachusetts, and began attending there on August 27, 2001. Following the District's Multi-Disciplinary Evaluation of C.W., it issued an Individualized Education Plan ("IEP") on August 30, 2001, which suggested placement of C.W. in the District's public schools. C.W.'s parents rejected the IEP, and requested a due process hearing on September 10, 2001.

C.W. remained at Swift River through the entire 2001-2002 school year. She then enrolled at the King George School, a private school in Vermont, and began her studies there on October 7, 2002. It was only in November of 2002 that the District processed C.W.'s request for a due process hearing on her IEP, and this hearing was held on February 3, 2003. At this hearing, the Hearing Officer concluded that the District had

provided C.W. with an appropriate IEP. This decision was affirmed by the Appeals Panel.

C.W. and L.W. filed suit in federal court on November 3, 2003, seeking an award of either tuition reimbursement or compensatory education due to the alleged violation of their procedural due process rights under IDEA. C.W. filed a Motion for Disposition on October 13, 2005, and the District filed its Motion for Judgment on the Administrative Record on November 7, 2005. Although all responses were timely, there was no stay entered on the record and there was no apparent reason for any delay, the District Court did not issue any ruling on these Motions until May 15, 2009, when it granted the District's Motion and denied C.W.'s. C.W. filed her notice of appeal on June 9, 2009.

II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(*i*)(2)(A), and this Court has jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's legal determinations, and review the District Court's factual findings for clear error. Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004).

III.

IDEA establishes certain requirements to ensure that students with disabilities receive a "free appropriate public education" in participating states. The main mechanism used by the Act to ensure the provision of a free appropriate public education is the development of an IEP. Id. at 198. Should the parents be dissatisfied with the proposed

IEP, they have the right to seek review at an "impartial due process hearing . . . conducted by the State educational agency or by the local educational agency." 20 U.S.C. § 1415(f)(1)(A). Following this hearing, "[a]ny party aggrieved by the findings and decision" may seek review in federal district court. Id. § 1415(*i*)(2)(A). Should the District Court conclude that IDEA was violated, it "shall grant such relief as the court determines is appropriate." Id. § 1415(*i*)(2)(C)(iii).

Given the undefined nature of what constitutes appropriate relief, the Supreme Court concluded that Congress intended to convey broad discretion to the courts in crafting remedies for violations of IDEA. Sch. Comm. of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 358, 369 (1985). The relief simply must be "'appropriate' in light of the purposes of the Act[:] . . . [P]rincipally to provide handicapped children with 'a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." Id.

One type of relief granted by courts is tuition reimbursement for periods spent in private school. Such relief, however, is appropriate "only if a federal court concludes both that the public placement violated the IDEA and that the private school placement was proper under the Act." Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993) (emphasis in original); accord Burlington, 471 U.S. at 374 ("If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement for any interim period in which their child's placement [was outside of the public school district].").

4

In the present case, C.W. does not appeal the District Court's determination that her IEP offered a free appropriate public education. Instead, she asserts that the extended delay between her request for a due process hearing to review the proposed IEP and the ultimate resolution of this issue was so egregiously prolonged that the delay offers independent justification for granting an award of tuition reimbursement or compensatory education. First, it is clear that C.W. is not entitled to tuition reimbursement under Burlington and Carter, as she was, at all times, offered a free appropriate public education. Regardless of C.W.'s implications that her IEP was deficient, the appropriateness of her IEP is not challenged on appeal, and we must accept that her IEP offered a free appropriate public education. Further, C.W. cannot succeed even if Burlington and Carter are read as describing one instance in which tuition reimbursement is appropriate without foreclosing other possibilities where such relief may be appropriate. The fact that there was an extended delay in upholding the IEP has no relevance to the appropriateness of the education offered to C.W., and punishing the District by requiring it to reimburse tuition for which it would not otherwise be responsible does not advance the goal of providing education to those with disabilities. Given this fact, we will affirm the District Court's conclusion that tuition reimbursement is not appropriate relief in this case.

An alternative form of relief granted for violations of IDEA is "compensatory education," which allows students to stay in the public school system beyond the age of twenty-one "in order to make up for the earlier deprivation of a free appropriate public

5

education." Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 249 (3d Cir. 1999). This relief "accrues when the school knows or should know that the student is receiving an inappropriate education," and is not triggered solely by an inappropriate IEP. Id. at 250.

C.W. also is not eligible for compensatory education. The purpose of compensatory education is not to punish school districts for failing to follow the established procedures for providing a free appropriate public education, but to compensate students with disabilities who have not received an appropriate education. Here, there is no allegation that the schooling received by C.W. was inappropriate. Given that she was not denied an appropriate education, the imposition of compensatory education would not further the purposes of IDEA, and, therefore, we will also affirm the District Court's refusal to grant such relief.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.