WYNN, Circuit Judge,
concurring in part and dissenting in part:
I agree with the majority that Sumter County School District 17 (“the School District”) failed to provide T.H. with a free appropriate public education. However, I write separately to dissent from the majority’s holding that there was sufficient evidence in the record to show that home-placement was appropriate. In light of this lack of evidence, I would remand this matter to the district court for additional fact finding.
I.
As the majority details, the services provided by the School District were insufficient to provide the educational services needed to comply with the Individualized Education Plans (“IEPs”) developed for T.H., an autistic student. See 20 U.S.C. § 1401(9) (indicating that, to satisfy their obligation to provide a free appropriate public education, schools must provide special education and related services “in conformity with the individualized education program” designed for the student). Specifically, the School District’s failure to ensure the effective provision of Applied Behavior Analysis (“ABA”) therapy constituted a failure to implement a material element of each IEP designed to guide T.H.’s education. See Neosho R-V Sch. Dist. v. Clark, 315 F.3d 1022, 1027 n. 3 (8th Cir.2003) (concluding that the IDEA is violated “if there is evidence that the school actually failed to implement an essential element of the IEP that was necessary for the child to receive an educational benefit”); Houston Indep. Sch. Dist. v. Bobby R., 200 F.3d 341, 349 (5th Cir.2000) (“[T]o prevail on a claim under the IDEA, a party challenging the implementation of an IEP must show more than a de minim-is failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP.”). Thus, I agree with the majority’s conclusion that the School District failed to provide T.H. with a free appropriate public education.
I also agree with the majority’s analysis of the weight that courts should give to the “least-restrictive environment requirement” when considering the appropriateness of home-placement. Though failure to meet this requirement might establish a *490 school district’s failure to comply with the IDEA, see 20 U.S.C. § 1412(a)(5)(A), this “requirement” must logically be relaxed when considering the appropriateness of an educational program designed for implementation in the relative isolation of a child’s home. However, as the majority recognizes, whether the private placement adheres to this relaxed conception of the restrictiveness requirement is still a factor to be considered when assessing the overall appropriateness of private placement.
Still, notwithstanding my substantial agreement with portions of the majority opinion, I cannot agree with the majority that the home-placement program in place to educate T.H. is “reasonably calculated to enable the child to receive educational benefits.” See M.S. ex rel. Simchick v. Fairfax Cnty. Sch. Bd., 553 F.3d 315, 324 (4th Cir.2009); Carter v. Florence Cnty. Sch. Dist. Four, 950 F.2d 156, 163 (4th Cir.1991) (internal quotation marks omitted).
II.
When assessing the appropriateness of private placement, subject to limited exceptions,[1] we should consider “the same considerations and criteria that apply in determining whether the School District’s placement is appropriate[.]” Frank G. v. Bd. of Educ. of Hyde Park, 459 F.3d 356, 364 (2d Cir.2006). As such, we must determine whether the proposed placement provides “educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child to benefit from instruction.” Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)(internal quotation marks omitted).
Here, the only evidence provided as to the design of the educational program provided for T.H. at home was the testimony of his mother, May Baird. Baird testified that she had hired Laura Walkup, “a young woman who has experience working in an ABA program,” to work with T.H. during the school week. When pressed on cross-examination, she admitted that she was unsure how many hours Walkup worked with T.H. during a given week, stating that her husband “would be a better one to answer that.” Indeed, Baird indicated throughout her testimony that she was “not the best one to answer” questions regarding the details of the services provided to T.H. because she is “often not home.” However, Baird was able to approximate that Walkup worked with T.H. for “20 to 30 hours” per week.
Notably, Baird failed to elaborate on the details of the educational services provided by Walkup. Problematically, she made no mention of the goals of the therapy, indicating merely that Walkup was “working on specific objectives.” This lack of specificity stands in stark contrast to the IEPs developed for T.H., which include pages of detailed educational objectives related to, inter alia, his “socialization skills,” “classroom work skills,” “general knowledge and comprehension skills,” “daily living skills,” and “functional communication skills.” Moreover, Baird provided no testimony regarding how the program was designed to measure progress toward the unidentified “specific objectives,” or how much progress was required to demonstrate accomplishment of said objectives. In short, giv *491 en that the Court is asked to consider whether the program designed for T.H. would meet his “unique needs,” without more clarification of the contents of the program, I cannot answer that question affirmatively.
In addition, Baird made no mention of the services other than ABA therapy, if any, that were provided for T.H. at home.[2] As noted by the School District, there was “no evidence that speech-language therapy or occupational therapy, two related services included in the school IEP as supportive services ... were provided in the home program.” Brief of Appellant at 47. To be sure, given T.H.’s autism, properly administered ABA therapy was a necessary component of any plan reasonably calculated to confer on him an educational benefit. But the ill-defined nature of that therapy counsels us to remand this matter to the district court for the fact-finding necessary to determine whether its provision was sufficient to demonstrate the appropriateness of home-placement.
That said, the evidence concerning therapy was not the only evidence offered concerning the program in place to educate T.H. at home. Baird also testified about opportunities provided for T.H. to socialize. Presumably, this testimony was given in an attempt to demonstrate compliance with the least-restrictive-environment requirement. But, even under an appropriately relaxed restrictiveness inquiry, there was insufficient evidence to demonstrate that the home-placement program would provide T.H. with adequate opportunities to interact with children who are not disabled. This point is acknowledged, in part, by the majority opinion which states that “more detailed evidence of the nature of the community outings and the manner in which the parents were using the outings to improve T.H.’s social skills would have been preferable.”
Indeed, scant evidence was provided regarding opportunities for T.H. to interact with non-disabled children. Baird testified that the therapist hired to work with T.H. “fairly regularly” took him “for social opportunities on playgrounds and stuff around locally.” She also indicated that T.H.’s father took the child into the community “on a daily basis.” However, Baird, who was not present during these outings, was unable to testify as to their duration. Also, her testimony is unclear regarding the frequency with which T.H. interacted with non-disabled children during these trips into the community.[3] If undefined periods of socialization with other children, regardless of whether or not they are disabled, are sufficient to satisfy the “least-restrictive-environment requirement,” that requirement is rendered a nullity.
In sum, where there was insufficient evidence as to how the plan designed to educate a child at home is calculated to actually provide an educational benefit, it *492 was error for the district court to say that the “calculation” was reasonable. Accordingly, this matter should be remanded so that the district court can further examine the contents and structure of the plan proposed during home-placement. Without more evidence explaining the contents of the plan, a conclusion regarding its adequacy cannot be drawn absent considerable speculation.

. For instance, the private placement can be deemed appropriate even if failing to meet the state education standards or requirements. Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 14, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). Also, as indicated above, parents "may not be subject to the same mainstreaming requirements as a school board.” M.S. ex rel. Simchick, 231 F.3d at 105.

. As noted by the District, there was "no evidence that speech-language therapy or occupational therapy, two related services included in the school IEP as supportive services ... were provided in the home program.” Brief of Appellant at 47.

. Baird was asked if T.H. had "an opportunity to relate to ... typically developing peers, other peers, or other opportunities for social interaction.” She replied, "He does out in the community, yes, and with, with friends, family members of friends.” Baird did not clarify whether, in mentioning these friends or their family members, she was identifying “typically developing peers” or instead "other peers.” Similarly, when asked on cross-examination about T.H.'s social interactions with "typically developing peers," Baird mentioned "family friends that have children that are [T.H.’s] age that he can interact with,” but did not discuss how often those children were available to interact with T.H.