UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHAEL POLLOWITZ; SHARON
BROWN,
                    *Plaintiffs-Appellants,*

            and

ANDREW POLLOWITZ, a minor, by his
parents and next friends, Michael
Pollowitz & Sharon Brown,
                    *Plaintiff,*            No. 00-1690

            v.

JERRY D. WEAST, (officially as),
Superintendent, Montgomery
County Public Schools;
MONTGOMERY COUNTY BOARD OF
EDUCATION,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Frederic N. Smalkin, District Judge.
(CA-99-3118-S)

Argued: March 1, 2001

Decided: April 17, 2001

Before WILKINS, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Michael Jeffrey Eig, MICHAEL J. EIG & ASSO-CIATES, P.C., Washington, D.C., for Appellants. Eric Charles Brousaides, REESE & CARNEY, L.L.P., Columbia, Maryland, for Appellees. **ON BRIEF:** Haylie M. Iseman, MICHAEL J. EIG & ASSOCIATES, P.C., Washington, D.C., for Appellants.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this action arising under the Individuals with Disabilities Education Act (IDEA), *see* 20 U.S.C.A. § 1400-1487 (West 2000), Andrew Pollowitz, by and through his parents Michael Pollowitz and Sharon Brown ("the Parents"), appeals an order of the district court granting summary judgment in favor of the Montgomery County, Maryland, Board of Education and its superintendent (collectively, "MCPS"), in the Parents' action for reimbursement of Andrew's private school tuition. Finding no error, we affirm.

I.

A.

The IDEA is designed "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." *Id.* § 1400(d)(1)(A). *See generally id.* § 1400(c), (d) (describing need for, and purposes of, the IDEA). A state may qualify for federal funds under the IDEA by adopting "policies and procedures to ensure that it meets" several enumerated conditions. *Id.* § 1412(a).

Some of these conditions are as follows. All eligible children must be provided a "free appropriate public education" (FAPE). *Id.* § 1412(a)(1). Education agencies and intermediate educational units must develop an "individualized education program" (IEP) for each eligible child before the beginning of each school year. *Id.* § 1412(a)(4). A local educational agency will pay for a child's private school tuition when the child is placed in, or referred to, such a school by the State or the local agency as a means of complying with its legal obligations. *See id.* § 1412(a)(10)(B)(i). And, when a parent places a child into private school unilaterally, a court or hearing officer may require reimbursement by the agency if "the agency had not made a [FAPE] available to the child in a timely manner." *See id.* § 1412(a)(10)(C)(ii). However,

> [t]he cost of reimbursement . . . may be . . . denied—
>
> (I) if—
>
>> (aa) at the most recent IEP meeting that the parents attended prior to removal of the child from the public school, the parents did not inform the IEP Team that they were rejecting the placement proposed by the public agency to provide a free appropriate public education to their child, including stating their concerns and their intent to enroll their child in a private school at public expense; or
>>
>> (bb) 10 business days (including any holidays that occur on a business day) prior to the removal of the child from the public school, the parents did not give written notice to the public agency of the information described in division (aa)[.]

*Id.* § 1412(a)(10)(C)(iii). State law shall excuse a failure to give such notice if the parents are not informed of the notice requirement. *See id.* § 1412(a)(10)(C)(iv)(IV).

As a participating state, Maryland has enacted laws designed to satisfy the IDEA conditions. A provision of the Maryland Code states in pertinent part:

> (a) *Basis for placement*. — A child with a disability who needs special education and related services that cannot be provided in a public county, regional, or State program shall be placed in an appropriate nonpublic educational program that offers these services.

> (b) *Payment of cost — In general*. — The cost of the non-public educational program shall be paid by the State and the county in which the child is domiciled in accordance with § 8-415(d) of this subtitle, as appropriate.

Md. Code Ann., Educ. § 8-406 (1999). Of particular relevance here is Md. Code Ann., Educ. § 8-413(i)(1) (1999), which provides in pertinent part that when a parent enrolls a child in nonpublic school without referral by, or consent from, the local school system, the county "is not required" to reimburse the parent for costs associated with that enrollment if the parent does not provide the county with sufficient prior written notice of that enrollment. To be sufficient, the notice must "reject[ ] the program proposed by the county board, includ[e] the reason for the rejection, and stat[e] an intention to enroll the student in a nonpublic school." Md. Code Ann., Educ. § 8-413(i)(1).

### B.

Andrew is a "child with a disability" as defined by the IDEA. *See* 20 U.S.C.A. § 1401(3)(A). Andrew was born on August 18, 1992 and was found eligible for special education services under the IDEA in February 1996. The Parents approved IEPs for public school education for Andrew for the remainder of the 1995-96 school year, and for the 1996-97 and 1997-98 school years.

The Parents attended a meeting to shape an appropriate IEP for 1998-99 on March 23, 1998 and agreed to the IEP proposed for that year. However, unbeknownst to MCPS, the Parents had already applied to the nonpublic Lab School for the 1998-99 school year, and Andrew was accepted on May 19, 1998. By June 2, 1998, the parents had signed an "Enrollment Contract" for the upcoming school year and paid a $10,000 deposit.

On June 29, 1998, the Parents' attorney sent a letter to the principal of Kensington Parkwood Elementary, the public school that Andrew had been attending. The letter states:

> We have been retained to represent the above-referenced student by his parents, Dr. Sharon Brown and Dr. Michael Pollowitz, in their efforts to procure appropriate special education services from Montgomery County Public Schools. As you are aware, Andrew's parents attended an [IEP] meeting at your school on March 23, 1998, and at that time approved a placement proposal for a "Level 4 Language Class." They also expressed a number of reservations about Andrew's education.
>
> Since that meeting, our clients have explored other placement options for Andrew and have procured his placement into The Lab School of Washington for the coming year. The[y] intend to place Andrew there and are requesting that MCPS consider supporting that placement. They also have procured additional assessments, copies of which are enclosed, in support of their request.
>
> Please refer this matter to the Central Placement Unit for consideration of the new assessments and the family's request for consideration of Lab School as a placement for Andrew.

J.A. 97. Enclosed with the letter were two private evaluations of Andrew.

As a result of the letter, MCPS scheduled a meeting with the Parents for August 14, 1998 to discuss the new evaluations. The Parents subsequently rescheduled the meeting for September 23 because of existing vacation plans. The Parents also forwarded another evaluation to MCPS for its review. At the September 23 meeting, MCPS continued to recommend placement at Kensington Parkwood. The Parents did not agree to this IEP, however, and Andrew attended the Lab School for that year.

On June 9, 1999, as the 1998-99 school year was concluding, the Parents requested an administrative hearing seeking tuition reimbursement for their enrollment of Andrew at the Lab School for the 1998-99 school year. On June 22, seven days prior to the first day of the hearing, MCPS moved to dismiss, contending that the request for tuition reimbursement should be denied because of the Parents' failure to provide prior notice of their rejection of the proposed IEP in accordance with 20 U.S.C.A. § 1412(a)(10)(C)(iii) and Md. Code Ann., Educ. § 8-413(i)(1). The parents subsequently filed a written opposition to the motion.

The administrative law judge (ALJ) granted the motion to dismiss, deciding, as is relevant here, that (1) MCPS's motion to dismiss could be considered even though it was filed late; (2) the Parents did not comply with § 8-413(i)(1);[1] (3) the Parents' noncompliance barred their reimbursement claim regardless of whether MCPS was prejudiced by the noncompliance; and (4) the Parents received a parental rights booklet (notifying them of the notice requirements) from MCPS as recently as the March 23, 1998 meeting.

The Parents then initiated this action in federal district court, seeking primarily reimbursement for the tuition expenses and costs incurred in relation to Andrew's enrollment in the Lab School for the 1998-99 school year. The district court granted summary judgment to MCPS, ruling that (1) the ALJ did not err in considering the tardy motion to dismiss; (2) the Parents failed to provide timely notice of their rejection of the proposed IEP; (3) MCPS was prejudiced by the Parents' failure to provide timely notice; and (4) MCPS had no duty either to provide additional notice to the Parents of the applicable notice provisions after receiving the June letter or to explain to the Parents the meaning of the relevant notice provisions. The court also ruled that the ALJ did not improperly place a burden of proof on the

---

[1]The Parents had contended that § 8-413(i)(1) was preempted because the IDEA required participating states to allow parents to give either oral or written notice of their rejection of the proposed plan, while § 8-413(i)(1) allows only written notice. The ALJ found that § 8-413(i)(1) was not preempted and that the Parents failed to provide oral notice of their rejection of the proposed plan at the March 23, 1998 IEP meeting.

Parents, and the court refused the Parents' request to disregard the procedural grounds upon which the ALJ's decision was based.

## II.

We review a grant of summary judgment de novo, viewing the disputed facts in the light most favorable to the Parents. *See Figgie Int'l, Inc. v. Destileria Serralles, Inc.*, 190 F.3d 252, 255 (4th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A.

The Parents first maintain that the district court erred in holding that the ALJ properly considered MCPS's written motion to dismiss. The Parents contend that at the time of their hearing before the ALJ, Maryland regulation provided that written motions "[b]e filed not later than 15 days before the date of the hearing," Md. Regs. Code tit. 28, § 28.02.01.16(A)(3)(a) (Supp. 1994), and that the written motion here was filed only seven days prior to the hearing. However, a Maryland regulation provides that a "judge has the authority and duty to . . . [m]odify or waive, reasonably, any time periods established by this chapter." Md. Regs. Code tit. 28, § 28.02.01.08(A)(4) (Supp. 1994). The Parents did not and do not maintain that they did not have sufficient time to prepare a response. Accordingly, the ALJ did not abuse her discretion in considering the motion.

## B.

The Parents next contend that the district court erred in concluding that they did not provide timely notice of Andrew's enrollment in the Lab School. We conclude that the Parents have waived the issue.

The ruling of the district court that the Parents failed to present timely notice of Andrew's enrollment was based on the following analysis. With regard to oral notice, the district court ruled that the

Parents did not inform MCPS that they were rejecting the proposed IEP at the March 23, 1998 meeting because, despite expressing reservations about the plan, they agreed to and signed it. Regarding written notice, the district court ruled that the Parents' June letter was not notice of rejection of the proposed plan because the letter informed the school board only "that the parents had procured Andrew's placement in the Lab School and request[ed] that [MCPS] 'consider supporting that placement.'" J.A. 231. The district court ruled that the letter did "not inform [MCPS] that the IEP was rejected as unsuitable," but conveyed only that the Parents believed that placement in private school would be even better for Andrew. *Id.* The district court further determined that the June letter was untimely because it was sent after Andrew was already enrolled in private school.

In their opening brief to this court, the Parents argue vigorously that the June letter was timely—because they claim it preceded Andrew's "enrollment" in private school[2]—but they offer no argument challenging the ruling that the letter did not convey that the Parents no longer considered the proposed IEP to be a legally adequate plan.[3] We therefore conclude that the Parents have waived this issue.

[2]Specifically, the Parents argue that they did not "enroll" Andrew in private school in early June when they signed the enrollment contract and put down a $10,000 deposit on his education. They argue that he was not "enrolled" in private school until he actually began physically attending the school, well after the June 29 letter.

[3]Regarding the substance of the letter, the Parents make only the conclusory statement that the letter "provided MCPS with all of the necessary and relevant information required" to satisfy the notice provisions. Br. of Appellants at 30. In its brief, MCPS argues that the district court correctly ruled that the June letter was substantively deficient. In addition to the reason given by the district court, MCPS notes that the letter fails to state the reasons behind the Parents' decision to send Andrew to the Lab School. In their reply brief, the Parents address the latter argument but again provide no argument challenging the ruling that the letter was not notice of rejection of the proposed IEP because it did not assert that the plan was not legally adequate.

The Parents do argue that they provided oral notice of their rejection of the proposed plan at the March 23, 1998 meeting when they approved the plan but did so with reservations. That argument is wholly without merit.

*See 11126 Baltimore Blvd., Inc. v. Prince George's County, Md.*, 58
F.3d 988, 993 n.7 (4th Cir. 1995) (en banc) (deeming allegations of
error abandoned when appellant failed "to assert any reasons for, or
arguments supporting," them); Fed. R. App. P. 28(a)(9)(A) (providing
that an appellant's opening brief must contain the "appellant's conten-
tions *and the reasons for them*" (emphasis added)). Because of this
waiver, we do not address any other issue regarding the substance or
timeliness of the June letter.[4]

## C.

The Parents further maintain that the district court erred in conclud-
ing that MCPS was prejudiced by any failure on their part to give
notice of their rejection of the proposed IEP. They also argue that
absent prejudice, failure to provide timely notice of the rejection of
the proposed IEP cannot bar a reimbursement claim. Assuming
*arguendo* that the district court erred in determining that MCPS was
prejudiced, we hold that MCPS was not required to demonstrate prej-
udice in order to bar the Parents' claim.

Section 8-413(i) plainly states that a county "is not required to
reimburse the parent . . . for tuition or related costs associated with
the enrollment" when the parents fail to provide timely notice of their
rejection of the proposed plan. In the face of this clear statutory lan-
guage, the Parents note that this court has held that a showing of prej-
udice to *the parents* is required before *the government* will be
penalized for its failures to comply with IDEA notice provisions. *See
Gadsby v. Grasmick*, 109 F.3d 940, 956 (4th Cir. 1997). In *Gadsby*,
the parents claimed that procedural irregularities in the IEP-
development process were so great that the irregularities actually con-
stituted the denial of a FAPE, and therefore entitled the parents to
reimbursement for their children's private school education. *See id.*

---

[4]The Parents contend that MCPS should be estopped from asserting
that they failed to timely reject the proposed plan because MCPS urged
the Parents not to reject the plan. No action by MCPS justifies estoppel,
however. MCPS attempted to persuade the Parents that the proposed plan
would serve Andrew's interests and that they should not reject the plan
for that reason. MCPS did not urge them to accept the plan even if they
were convinced that it was legally inadequate.

We held that the procedural irregularities did not constitute a denial of a FAPE because they did not actually interfere with provision of a FAPE. *See id. Gadsby* is of no assistance to the Parents here, however, since § 8-413(i) directly outlines the consequence of the Parents' failure to give timely notice of Andrew's enrollment.

D.

The Parents next contend that their failure to provide timely notice of their rejection of the proposed IEP is excused because MCPS failed to inform them that such notice was required. We disagree.

Section 1412(a)(10)(C)(iv)(IV) of Title 20 of the United States Code requires participating states to enact policies and procedures to ensure that nonpublic school reimbursement claims will not be barred because of parents' failure to comply with the applicable notice provisions when "the parents had not received notice, pursuant to [20 U.S.C.A. § 1415], of the notice requirement." The ALJ found that the Parents received a copy of the applicable procedural safeguards at the March 23, 1998 meeting, and the Parents do not challenge that determination. The Parents nevertheless argue that the IDEA required that the Parents be afforded *additional* notification of the notice requirements after they sent their June letter, and that the meaning of "enroll" in the applicable notice provisions was not adequately explained to them. Our review of the Parents' memorandum in opposition to MCPS's motion to dismiss and of the ALJ's decision indicates that these issues were never raised before the ALJ. We therefore will not consider them. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) (explaining that "courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice").

E.

The Parents also argue that the ALJ and the district court improperly placed upon them the burden of proof regarding certain issues and that the district court failed to overturn irregularly made administrative findings. However, burden of proof and fact finding issues are

of no consequence here because the parties agree regarding all material facts.

### F.

The Parents finally contend that their failure to provide notice should not be considered because Supreme Court precedent mandates that they be reimbursed for their private school tuition if they prove that MCPS denied them a FAPE. *See Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 9-10 (1993); *Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 370-72 (1985). The two Supreme Court cases cited by the Parents, however, predate the enactment of the notice requirements[5] and therefore do not authorize us to disregard the statutory implications of the Parents' procedural missteps.

### III.

In sum, we conclude that the Parents have waived any challenge to the conclusion of the district court that they failed to provide MCPS with timely notice of their rejection of the proposed IEP, and we affirm the order granting summary judgment in favor of MCPS.

*AFFIRMED*

---

[5]The Maryland and federal notice provisions were adopted in October 1996 and June 1997 respectively. *See Carnwath v. Bd. of Educ.*, 33 F. Supp. 2d 431, 433 (D. Md. 1998).