Steven WOLFE and Alexandra Galbraith, as parents of disabled child, Charlotte W., Plaintiffs,

v.

TACONIC–HILLS CENTRAL SCHOOL DISTRICT, Defendant.

No. 00–CV–1023.

United States District Court, N.D. New York.

Sept. 19, 2001.

Family Advocates, Inc., Kingston, NY (Rosalee Charpentier, Keith P. Byron, of counsel), for plaintiffs.

Young, Sommer, Ward, Ritzenberg, Wooley, Baker & Moore, LLC, Albany, NY (Karen Wade Cavanagh, Kenneth S. Ritzenberg, of counsel), for defendant.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

The plaintiffs Steven Wolfe ("Wolfe") and Alexandra Galbraith ("Galbraith")

commenced the instant action pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, seeking tuition reimbursement for September 10, 1997 through April 8, 1998, when they unilaterally placed their daughter Charlotte in a private school. The defendant Taconic–Hills Central School District ("the District") moved for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiffs opposed and cross-moved for summary judgment. Oral argument was heard on May 25, 2001 in Albany, New York. Decision was reserved.

The parties submitted supplemental briefs addressing the issue of the authority of the hearing officer to consider equitable factors in determining whether to award tuition reimbursement, pursuant to an Order dated August 27, 2001. *See* Docket No. 36.[1]

## II. FACTS

Charlotte was born on July 5, 1990. She and her parents became residents of the District in August 1995. She attended kindergarten at a private school during the 1995–1996 school year. The plaintiffs never registered Charlotte for school in the District.

In May 1996, at their request, plaintiffs met with the principal of the District's RoeJan–Taconic Hills Elementary School ("RoeJan") and received a tour of the first grade class and a transitional first grade class ("T–1 class") for children requiring additional preparation for first grade. At this time, they shared their concerns with the principal that Charlotte may have a learning disability. The plaintiffs did not like the appearance of the children in the T–1 class or the condition of the RoeJan building, which, in fact, was closed one year later. They continued to search other schools in the area and ultimately enrolled Charlotte in first grade at the Berkshire Country Day School in Lenox, Massachusetts for the 1996–1997 school year.

In the summer of 1997, Charlotte was evaluated at the Yale Child Study Center. The evaluators recommended that she attend a structured school with specially trained staff. She was also tested at the Kildonan School, which concluded that Charlotte exhibited patterns of dyslexia. In August 1997, the plaintiffs contacted Kevin Reis ("Reis"), the Chairperson of the District's Committee on Special Education ("CSE"), and informed him of Charlotte's history and that, at that point, they were considering sending her to Kildonan.[2] Reis told them that they needed to refer Charlotte to the District CSE. He also told them that the District would not provide funding to send Charlotte to Kildonan, but they could request bussing.

In early September 1997, Wolfe registered Charlotte with the District, signed a consent for the District to evaluate her, and referred her to the CSE.[3] He also provided copies of her evaluations from the Yale Child Study Center and Kildonan, and a letter indicating that Charlotte was

1. Although the plaintiffs' supplemental brief was filed three days late, it has nevertheless been considered.

2. The substance of this conversation is contested. Reis contends that the plaintiffs had already made up their minds to send Charlotte to Kildonan and only asked how they could receive transportation services. The plaintiffs, however, assert that they had not yet determined where they would send Charlotte and called Reis to find out what services the public school could offer.

3. There is some discrepancy as to whether these events occurred on September 2, 1997 or September 3.

starting Kildonan on September 10, 1997[4] and expressing his hope that the District could transport her to Kildonan with other students.

On September 11, 1997, plaintiffs received a letter notifying them of a CSE meeting. The CSE never evaluated Charlotte, despite consent to do so, and never pursued obtaining her records from Berkshire Country Day School. A draft Individualized Education Program ("IEP") was formulated, recommending that Charlotte be classified as learning disabled and receive forty-five minutes of consultant teacher services five times per week. The draft IEP was never completed.

At the CSE meeting, the plaintiffs rejected the draft IEP and requested that the District provide transportation services to Kildonan. The CSE agreed. By letter dated September 30, 1997, the plaintiffs were notified that the CSE recommended that Charlotte be classified as learning disabled and be transported to Kildonan. Galbraith signed a form consenting to the described special education program. Charlotte attended Kildonan from September 10, 1997 until April 8, 1998, when she and her parents moved out of the District to Connecticut.

On May 13, 1998, Galbraith wrote a letter to the District Superintendent stating that she was unaware of her due process rights and would have insisted that the District provide appropriate placement for her daughter or fund her education elsewhere. On June 10, 1998, a meeting was held between the plaintiffs, their attorney, Reis, and the District's attorney. At that meeting, Galbraith requested an impartial hearing for the first time.

A hearing was held before an Independent Hearing Officer ("IHO") on August 7, 1998. He determined that the District 1) was negligent in its "child-find" responsibilities,[5] 2) failed to notify the plaintiffs of their due process rights or the public school facilities available to them, and 3) failed to evaluate Charlotte and prepare a complete IEP which accurately reflected her needs. He also determined that Kildonan was an appropriate placement and that equitable considerations supported tuition reimbursement.

The State Review Officer ("SRO") agreed with the IHO that the District failed to provide a free and appropriate public education for Charlotte because it did not appropriately evaluate her, and that Kildonan was an appropriate placement. However, he denied tuition reimbursement on the grounds that Galbraith made clear she had no intention of enrolling Charlotte in public school and she did not like RoeJan, and the plaintiffs delayed in referring Charlotte to the CSE and requesting an impartial hearing.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine

---

4. At the time of the letter, the plaintiffs had only verbally enrolled Charlotte at Kildonan. She had not been officially enrolled there yet.

5. To identify, locate, and evaluate all children in the district needing special education. 20 U.S.C. § 1412(a)(3)(A) & (B).

issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence … in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. *Standard of Judicial Review under IDEA*

■ The rulings of administrative hearing and review officers are "subject to 'independent' judicial review," *Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir.1998)(quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 205, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)), based "on the pre-ponderance of the evidence." § 1415(i)(2)(B). However, this authorization to engage in an independent review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities they review." *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034. Thus, the district court must give "due weight" to the administrative proceedings, since courts "lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy.'" *Id.* at 206, 102 S.Ct. 3034 (quoting *San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 42, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973)). The amount of weight given to the administrative proceedings is discretionary. *See Wall v. Mattituck–Cutchogue Sch. Dist.,* 945 F.Supp. 501, 507 (E.D.N.Y.1996).

### C. *Tuition Reimbursement under IDEA*

■ IDEA provides that the district court "shall grant such relief as the court determines is appropriate." § 1415(i)(2)(B). The United States Supreme Court has held that this provision "includes the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act." *Sch. Comm. of Burlington v. Dep't of Educ.,* 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The two elements to consider in determining whether parents are entitled to tuition reimbursement are (1) whether the defendant failed to provide a free appropriate public education and (2) whether the private education services obtained by the parents were appropriate to their child's needs. *See id.* at 370, 105 S.Ct. 1996. Once this two prong test is satisfied, "equitable considerations are relevant in fash-

ioning [the appropriate] relief." *Id.* at 374, 105 S.Ct. 1996; *Florence County Sch. Dist. v. Carter,* 510 U.S. 7, 16, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). Such considerations "include the parties' compliance or non-compliance with state and federal regulations pending review, the reasonableness of the parties' positions, and like matters." *Town of Burlington v. Dep't of Educ.* ., 736 F.2d 773, 801–02 (1st Cir.), *cert. granted,* 469 U.S. 1071, 105 S.Ct. 562, 83 L.Ed.2d 504 (1984), *aff'd,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

In the present case, both the IHO and the SRO agree that the District failed to provide a free and appropriate public education for Charlotte, and that Kildonan was an appropriate placement. The District failed to present any new evidence which was not already considered and rejected by both the IHO and the SRO. Further, upon independent review, these findings are amply supported in the record. Therefore, the only issue remaining is, considering all relevant equitable factors, whether or not the plaintiffs are entitled to tuition reimbursement.

### 1. *Equitable Considerations*

■ In denying reimbursement based on equitable factors, the SRO necessarily rejected the IHO's determination concerning the credibility of the witnesses without the benefit of hearing the testimony. Further, the reasons set forth by the SRO, each of which will be addressed below, are not supported in the record.

The first factor the SRO gave for denying reimbursement to the plaintiffs was that Galbraith "was quite clear in her testimony that she and her husband were not interested in enrolling their child in the public schools." *In re Bd. of Educ. of the Taconic Hills Cent. Sch. Dist.,* Appeal No. 99–12 at 10 (Feb. 28, 2000)(Frey, State Review Officer). However, the testimony

he cites to support his conclusion states as follows:

> Q: So when you moved to Taconic Hills, ... you didn't look to enroll Charlotte in a public school, did you?
>
> A: No, not *initially.* We looked at Hawthorne Valley School.

(Hr'g Tr. at 285)(emphasis added). This is hardly a definitive refusal on the part of the plaintiffs to enroll their daughter in a public school. Further, Galbraith testified that she and her husband *did* want to know what the District could offer, *id.* at 264, 330, and that at the time they contacted Reis in August 1997, they did not know where they were going to send Charlotte to school. *Id.* at 258–59. Thus, the SRO inexplicably rejected this testimony that the plaintiffs attempted to find out what programs the District could offer, did not outright refuse to send Charlotte to the public school, and, in fact, rather than having made up their minds to have Charlotte attend Kildonan, had not decided what school she would attend when they contacted Reis. Finally, it should be noted that, while the plaintiffs clearly did not want the consultant teacher services offered by the District's CSE, there is no evidence that any other options were ever presented or discussed. Reis, assuming that the plaintiffs only wanted bussing to Kildonan, never even attempted to advise the plaintiffs of the other options available to them through the District. In addition, Reis told the plaintiffs that the District would not provide funding to send Charlotte to Kildonan, and that they should reject the services offered at the CSE meeting and ask for bussing. *Id.* at 207, 265–66, 341. The plaintiffs were never given the parent's guide to special education, or advised of their due process rights or the facilities available to them through the District.

The second equitable factor stated by the SRO is that Galbraith did not like RoeJan. However, her comments and concerns were made in the Spring 1996, well over one year before seeking placement for Charlotte. Moreover, her concerns over the condition of the building, the class size, and the appearance of the children in the class, does not necessarily mean that the plaintiffs would not consider other options the District could offer.

The SRO also noted that the plaintiffs had suspicions concerning Charlotte's disability in November 1996 but failed to tell the census taker in January 1997. However, the census taker merely took Charlotte's name and birth date and asked if she attended RoeJan. *Id.* at 250. She never asked if Charlotte was a special education student. The plaintiffs should not be blamed for the District's failure to properly perform its child-find obligations. Moreover, Galbraith had no obligation to tell the census taker of her mere suspicion that Charlotte was learning disabled.

Another factor relied upon by the SRO is that the plaintiffs waited to refer Charlotte to the CSE until only a few weeks before the 1997–1998 school year began. However, it was the plaintiffs, while still looking at other schools, who took the initiative in the first place to contact the District in August 1997 to find out about the options the District could offer. Since the District failed to identify and contact the plaintiffs, it was not until then that they learned of the requirement to enroll Charlotte and refer her to the District CSE. The plaintiffs cannot be blamed for the District's failure to contact them and advise them of the procedures to follow.

The final reason given by the SRO to justify denying reimbursement was the plaintiffs' delay in requesting an impartial hearing. However, this is contradictory to his finding that the parents never received timely and adequate notice of their due process rights or the parent's guide to special education from the District. In fact, Reis admitted that he never told them of their right to an impartial hearing, *id.* at 167, and the plaintiffs never knew of this right until May 1998, and only after talking to other parents at Kildonan. *Id.* at 276.

After independent review of the record, the IHO's argument in support of awarding tuition reimbursement to the plaintiffs is more convincing. He concluded that the District's failures to 1) provide Charlotte with an appropriate IEP for the 1997–1998 school year, 2) fulfill its child-find obligations, 3) notify the plaintiffs of the facilities available to them through the District, and 4) comply with mandated procedures to notify parents of special education students of their due process rights "are gross violations, and failings which assert just cause for equity by the parents." *See* Docket No. 14, Hearing Officer's Findings and Decision, *In re C.W. v. Copake Taconic Hills Cent. Sch. Dist.,* (Jan. 7, 1999)(Arcery, Impartial Hearing Officer).

## IV.   *CONCLUSION*

The plaintiffs are concerned parents who took painstaking efforts to find the best placement for their daughter's special needs. Their efforts and actions were not unreasonable. The District, however, did not act reasonably in many respects. It is not equitable to, in effect, reward the District for its multiple failures to comply with IDEA's mandates.

Accordingly, it is

ORDERED, that

1.   The defendant Taconic–Hills Central School District's motion for summary judgment is DENIED;

2. The cross-motion for summary judgment by plaintiffs Steven Wolfe and Alexandra Galbraith is GRANTED;

3. The decision of the State Review Officer is REVERSED to the extent that it denied tuition reimbursement;

4. The plaintiffs Steven Wolfe and Alexandra Galbraith are entitled to reimbursement from defendant Taconic–Hills Central School District for tuition expenses associated with their daughter Charlotte's placement at Kildonan School from September 19, 1997 through April 8, 1998 with interest;

5. The plaintiffs Steven Wolfe and Alexandra Galbraith are entitled to reasonable attorneys fees and expenses pursuant to 20 U.S.C. § 1415(i)(3)(B);

6. a. The plaintiffs' shall file and serve a verified application for tuition reimbursement, attorneys' fees, and expenses on or before Friday, October 5, 2001;

b. Defendant shall file and serve a response on or before Friday, October 19, 2001;

c. The application will be taken on submit, with a written order to follow.

The Clerk will thereafter be directed to enter a final judgment.

IT IS SO ORDERED.