Joseph **KITCHELT**, a minor, by his parents and next friends, Karl and Lori **KITCHELT**, et al. Plaintiffs

v.

Jerry D. **WEAST**, (officially as), Superintendent, Montgomery County Public Schools, et al. Defendants

No. CIV.PJM 03–1403.

United States District Court,
D. Maryland.

Sept. 27, 2004.

---

Michael J. Eig, Esquire, Haylie Iseman, Esquire, Chevy Chase, MD, for Plaintiffs.

Andrew Nussbaum, Esquire, Upper Marlboro, MD, for Defendants.

### *OPINION*

MESSITTE, District Judge.

#### I.

Karl and Lori Kitchelt, as parents and next friends of Joseph (Joey) Kitchelt, sue Jerry D. Weast, Superintendent of Montgomery County Public Schools, and the Montgomery County Board of Education (collectively, the "Montgomery County Public Schools" or MCPS), under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq* (IDEA). They contend that MCPS denied Joey a free appropriate public education (FAPE), and seek reimbursement for the cost of educating him at a private educational facility during the 2002–2003 school year.

The Kitchelts take issue with the decision of the Administrative Law Judge (ALJ) who, while finding that MCPS denied Joey a FAPE for some two weeks into the school year, ordered that they be reimbursed for only one month's tuition at Ivymount School, the private facility.

The parties have filed cross-motions for summary judgment and agree that disposition on that basis is proper. The Court will GRANT Plaintiffs' Motion in part and DENY it in part; it will DENY the Motion of MCPS. The Court AFFIRMS the Findings of Fact and Conclusions of Law of the ALJ, except insofar as he ordered reimbursement for only one month of Joey's tuition. The Court will ORDER that the

Kitchelts be reimbursed for one-half of the year's tuition at Ivymount.

Plaintiffs, as the prevailing parties, will be GIVEN LEAVE to file a petition for attorney's fees.

## II.

A) The decision of the ALJ in an IDEA case is deemed *prima facie* correct. *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir.1991). The court must make a "bounded, independent decision" based on the administrative record and any additional evidence presented. *Id.* at 103. If the court determines not to follow the ALJ's factual findings, it must provide an adequate explanation for its decision. *Id.* at 105. The party challenging a decision of an ALJ bears the burden of demonstrating that the decision was erroneous. *Spielberg v. Henrico County Pub. Sch.*, 853 F.2d 256, 258 n. 2 (4th Cir.1998), *cert. denied* 489 U.S. 1016, 109 S.Ct. 1131, 103 L.Ed.2d 192.

B) Parents who contend that they have been forced, at their expense, to seek private schooling for their child because a FAPE has not been provided by the local educational agency may seek retroactive reimbursement from the authority in a due process hearing and, if dissatisfied with the result there, may pursue the matter in court. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 370, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The parents run a significant risk: If it turns out that the child was offered a FAPE in timely fashion, reimbursement will be denied. *Id.* If the parents demonstrate that no FAPE was provided and that the private school placement was proper under IDEA, reimbursement will be made. *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). However, "equitable considerations are relevant in fashioning relief," *Burlington*, 471 U.S. at 374, 105 S.Ct. 1996, and the court has "broad discretion" in the matter. *Id.* at 369, 105 S.Ct. 1996. The court "must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required." *Carter*, 510 U.S. at 16, 114 S.Ct. 361.

## III.

The essential facts are not in dispute.

Joey Kitchelt, born on December 5, 1995, has been diagnosed as speech-language impaired and as suffering from symptoms of attention deficit hyperactivity disorder (ADHD) along with gross motion and fine motor disabilities. During the 1999–2000, 2000–2001 and 2001–2002 school years, he received special education and related services through MCPS. For the 2001–2002 term, he attended Brooke Grove Elementary School. During that year, he achieved only four of the thirty-four goals of his Individualized Education Program (IEP). His program at Brooke Grove consisted of 83% special education activities and 17% mainstream activities.

Believing that Joey required a 100% special education placement, his parents sought a meeting at Brooke Grove to develop his IEP for the 2002–2003 school year. At more or less the same time, they also began to gather information about private schools that they judged might better be able to address Joey's needs, including Ivymount School in Lower Potomac, Maryland. An application for Joey to attend Ivymount was submitted at or about that time.

At the IEP meeting which was held on May 10, 2002, the parties reviewed a draft IEP, but adjourned without resolution so that Joey could receive additional occupational therapy testing. The parties agreed to reconvene thereafter. They did so on June 5, 2002. Again the Kitchelts' position was that Joey should be placed in a 100% special education setting. Joey's father

specifically asked the team to consider placing Joey at Ivymount. But MCPS personnel disagreed and recommended that Joey continue at Brooke Grove to participate with disabled peers 83% of the time and with his non-disabled peers 17% of the time, *i.e.* for lunch and recess. The June 5, 2002 IEP meeting also concluded without resolution. The parties, however, agreed to send Joey's folder to the MCPS Central Placement Office in Rockville for review and to convene at Centralized IEP (CIEP).

Five weeks went by before MCPS forwarded Joey's file to Rockville. And, although MCPS Placement Specialist Victoria McDonald undertook a review of the file as of July 12 and within 2 weeks developed an alternative proposal for Joey, MCPS still did not contact the Kitchelts. Contact was only re-established when Joey's mother called Ms. McDonald, inquiring about when the CIEP meeting would be held. No date was set at that time, but Ms. Kitchelt did inform Ms. McDonald that her family had scheduled a vacation and would be unavailable the week of August 17.

Thereafter, without consulting with the Kitchelts or their counsel, MCPS sent a notice to the Kitchelts setting the CIEP meeting for August 12, a date on which the Kitchelts' counsel turned out to be unavailable. The meeting was further postponed until September 17, 2002.

The Montgomery County school term began on August 27. On September 3, Joey began at Ivymount. The Kitchelts gave MCPS no formal advance notice of their intention to withdraw Joey from the MCPS system, but it is clear that MCPS knew that for some time the Kitchelts had been contemplating that placement.

On September 17, 2002, some three weeks after MCPS classes had begun, the parties convened the CIEP meeting. At that meeting, MCPS staff changed their position and agreed that Joey should participate in special education 100% of the time. To this end, they recommended his placement at Carl Sandburg School, a MCPS facility. The Kitchelts, who continued to urge that Joey's placement be at Ivymount, where he had already started, were told to pursue the request through mediation. When they subsequently sought to do so, MCPS declined to participate so long as the Ivymount placement was on the agenda.

Joey remained at Ivymount for the entire 2002–2003 school year.

The Kitchelts then proceeded to a due process hearing where the ALJ found MCPS "fully responsible" for not having an IEP in place for Joey at the beginning of the 2002–2003 school year, in violation of 20 U.S.C. § 1414(d)(2)(A) and, further, that this failure deprived Joey of a FAPE for one month (August 27 to September 27, 2002) in violation of the same IDEA provision. By implication the ALJ found Ivymount to have been an appropriate placement for that month, but he also found that the proposed IEP and placement in a self-contained special education classroom at Carl Sandburg for the 2002–2003 school year would afford Joey a FAPE. Accordingly, the ALJ ordered MCPS to reimburse the Kitchelts for one month of tuition at Ivymount. The fact that the Kitchelts failed to formally notify MCPS in advance of their intention to place Joey at Ivymount was deemed not to bar their request for reimbursement.

The ALJ specifically found that the "Kitchelts cooperated with MCPS throughout the IEP process and did not bear legal responsibility for any of the delays."

## IV.

■ In their Motion for Summary Judgment, the Kitchelts argue, *inter alia*, that MCPS violated their procedural rights

during the IEP process and that the IEP and placement eventually proposed for Joey at Carl Sandburg did not offer him a FAPE. But at oral argument their argument boiled down essentially to one, *viz:*

Given that they were required to enroll Joey at Ivymount and pay his tuition for an entire year, and given that the delay in completing the IEP was wholly attributable to MCPS, they should be reimbursed for the entire year, not just one month.

MCPS submits that one month's reimbursement is quite sufficient.

The Court agrees with the facts as found by the ALJ and concurs in all but one of his conclusions, *i.e.* that the Kitchelts should only be reimbursed for one month.

 Again, the Court exercises equitable discretion in the matter, taking into account a multiplicity of factors. *Carter,* 510 U.S. at 16, 114 S.Ct. 361. Here the delay in developing the IEP was determined to be wholly the fault of MCPS, not at all that of the Kitchelts.[1] The critical gap was from June 5 to July 26, 2002, when the MCPS had no contact with the Kitchelts, responding only when Ms. Kitchelt called the MCPS placement special-

ist. Moreover, the Kitchelts were ultimately vindicated in their belief that Joey required a 100% special education placement, a view that MCPS had rebuffed in the May 11 and June 5 meetings and which it only embraced as of the September 17, 2002 CIEP meeting. Had the Kitchelts started Joey at Brooke Grove in the 83% special education program, in the MCPS system as of August 27, 2002, he would have been in a placement that everyone eventually agreed was inappropriate.

In the meantime, the Ivymount school year began on September 3. Joey was entitled to begin the school year at the beginning somewhere. The Court believes it would have been insensitive at best to have Joey withdrawn from Ivymount after three weeks and entered into Carl Sandburg. That would have made three schools for him in four months (Brooke Grove, Ivymount, and Carl Sandburg), a disconcerting sequence for any child, especially one with learning disabilities.

On this basis, it might be justifiable to require MCPS to reimburse for the entire school year. But this is an equitable decision and there are at least a few counter-

---

1. At oral argument, counsel for MCPS referred to the Kitchelts' attempt to "play the system," suggesting that they were committed to send Joey to Ivymount come what may and as a result should at most receive only limited reimbursement.

The Court has had occasion to express its antipathy to this argument in the past. Parents are taxpayers. Their children are entitled to a FAPE. They may honestly believe from the beginning (and may ultimately be able to demonstrate) that the best education the public school system can give is not good enough, *i.e.* is not "appropriate" within the meaning of FAPE.

The fact that the parents may hold this view cannot *ipso facto* amount to an automatic disqualification, so long as they continue in good faith (*e.g.* no intentional delays, no obstructions) to participate in the development

of an IEP and placement in the public school system. As always, the parents run the risk of being proved wrong about the school system's ability to provide a FAPE, in which case they will be denied reimbursement for a unilateral placement.

A further observation is in order. The mere fact that parents may enroll their child in a private school while the IEP process is underway—typically in the spring or summer for the fall term—is not by itself proof of bad faith on their part. In the great run of cases, the parents will simply be bowing to reality. Enrollments in special education facilities may fill up quickly. They may not always be available in late summer when the IEP is finally ready. As before, the key consideration is that the parents pursue in good faith the development of the IEP and the possibility of public school placement.

vailing considerations. First, it is the private school that dictates, once the student is enrolled, that his family must pay for an entire year (as opposed to a half or quarter year). Indeed, if the school were to demand a two or three year commitment, the unreasonableness of its demand would be readily apparent. It is also the private school that dictates whether there will be a no-refund policy for early withdrawal. The Court is disinclined to make its reimbursement decision dependent on the minimum enrollment period or tuition refund policy that the private school might unilaterally establish. While a one-year commitment is not necessarily unreasonable, neither is a one-half year, or one semester commitment. That, on balance, is where the Court comes down on this issue. One half of a year's tuition will give some financial security to the private school without being especially disruptive to its programs (especially where, as here, the school knows in advance that the parents are seeking public funding for the private placement). At the same time, giving a learning disabled child who has been forced to pursue the private placement for lack of a FAPE at least one semester of permanence will be less disruptive to his or her learning process. Instead of being pulled out of the private school in a matter of days or weeks to pursue the FAPE that belatedly comes into effect, the child will have some 4½ months to adjust to the school environment that he was impelled into by the school board's failure to act in timely fashion.

The Court does not intend this to be a hard and fast rule as far as reimbursement for private placements are concerned. On this particular record, however, the Court finds that one-half of Joey Kitchelt's private school tuition for the 2002–2003 school year is the proper measure.

Plaintiffs' counsel may submit a Petition for Attorney's Fees within twenty (20) days.

It will be so ORDERED.

### *ORDER*

The Court has considered the pending motions in the captioned case. Accordingly, it is for the reasons stated in the accompanying Opinion, this 24 day of September, 2004

ORDERED:

1) Plaintiffs' Motion for Summary Judgment (Paper No. 11) is GRANTED in part and DENIED in part;

A) The Motion is GRANTED insofar as Plaintiffs are awarded reimbursement for one-half the tuition expense for Joey Kitchelt at the Ivymount School for the 2002–2003 school year;

B) The Motion is otherwise DENIED.

2) Defendants' Cross–Motion for Summary Judgment (Paper No. 16) is DENIED;

3) Plaintiffs' counsel shall have LEAVE to file a Petition for Attorney's Fees within twenty (20) days.