Filed:  January 8, 2010

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 01-2116
(CA-00-1898)

K.J., a minor by her Parents and
Next Friends, B.J. and L.J.,

             Plaintiffs - Appellants,

      v.

Fairfax County School Board,

             Defendant - Appellee.

O R D E R

     Upon consideration of the pleadings filed relative to the motion to amend/correct opinion, the Court grants the motion. The opinion filed July 16, 2002, is modified by replacing the names of the appellants with their initials.

                                    For the Court

                                    /s/ Patricia S. Connor

                                    Clerk

UNPUBLISHED

# UNITED STATES COURT OF APPEALS

# FOR THE FOURTH CIRCUIT

K.J., a minor by her
Parents and Next Friends,
B.J. and L.J.,
     Plaintiffs-Appellants,       No. 01-2116

     v.

FAIRFAX COUNTY SCHOOL BOARD,
     *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-00-1898)

Argued: June 3, 2002

Decided: July 16, 2002

Before MOTZ and KING, Circuit Judges, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** William Bernard Reichhardt, WILLIAM B. REICH-
HARDT & ASSOCIATES, Fairfax, Virginia, for Appellants. John
Francis Cafferky, BLANKINGSHIP & KEITH, P.C., Fairfax, Vir-

ginia, for Appellee. **ON BRIEF:** Colleen C. Sweeney, WILLIAM B. REICHHARDT & ASSOCIATES, Fairfax, Virginia; John P. McGee-han, MCGEEHAN & ASSOCIATES, P.L.C., Fairfax, Virginia, for Appellants. Jennifer L. Redmond, BLANKINGSHIP & KEITH, P.C., Fairfax, Virginia; Thomas J. Cawley, HUNTON & WILLIAMS, McLean, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

   K.J., a minor, by and through her parents B.J. and L.J. (collectively, "the parents"), appeals from the district court's grant of summary judgment in favor of the Fairfax County School Board on her claims for reimbursement pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C.A. § 1400 et seq. (West 2000). The parents seek reimbursement for the non-educational costs of K.J.'s five-month stay at a private psychiatric facility and three years' tuition at a private boarding school. *See* 20 U.S.C.A. § 1412(a)(10)(C)(ii). We affirm.

I.

   On January 14, 1997, a school counselor for the Fairfax County Public Schools (FCPS) referred K.J., then a tenth grader at an FCPS high school, for evaluation to determine whether she qualified for special education services pursuant to the IDEA. J.A. 177. K.J. had been previously diagnosed with emotional disabilities, including obsessive-compulsive disorder, bipolar disorder, and severe attention deficit hyperactivity disorder. Prior to tenth grade, FCPS personnel, noting that K.J. nonetheless had earned high grades, concluded that her disabilities did not impair her school performance. J.A. 153-56, 163.

2

At the time of the 1997 referral, however, K.J.'s academic performance was deteriorating substantially, and she began demonstrating more serious behavioral problems. J.A. 198, 220, 262-65, 267. On April 2, 1997, subsequent to evaluation, FCPS informed K.J.'s parents that she was now eligible for special education services. J.A. 199-200. As a result, FCPS planned a meeting between the parents and a team of school personnel, including an administrator, special education teacher, and school psychologist, to develop an Individualized Education Program (IEP). The IDEA requires that an IEP team develop, for each student with a qualifying disability, a written IEP that includes a statement of the student's current levels of educational performance, a summary of special education and related services to be offered, and measurable annual goals and short-term objectives. 20 U.S.C.A. § 1414(d).

Four or five days later, the parents admitted K.J. to the Graydon Manor Psychiatric Hospital in Leesburg, Virginia, because K.J. had an "emotional breakdown." J.A. 8, 16, 390. While K.J. remained hospitalized at Graydon Manor, an IEP team convened on April 27, 1997; at the parents' request, the IEP meeting continued on June 12, 1997. The IEP team and the parents ultimately concluded that they would wait until K.J.'s discharge from Graydon Manor to determine an appropriate placement. J.A. 83, 207-18. The school system also agreed to, and later did, pay for the educational components of K.J.'s care at Graydon Manor. J.A. 8-9, 64, 391.

In September 1997, the parents removed K.J. from Graydon Manor and enrolled her in the Hyde School, a private boarding school located in Bath, Maine. J.A. 10. Although geared in many ways toward students with behavior problems, the Hyde School offered no special education program, no on-site clinical personnel, and no certified special education instructors.

The parties dispute when the parents notified FCPS of the transfer, but in any event the parents did not request reimbursement from FCPS of the approximately $25,000 annual tuition for the Hyde School until November 1997. J.A. 10-11, 84. In response to this request, FCPS scheduled another IEP team meeting with the parents for mid-December.

Prior to the meeting, on December 11, 1997, an FCPS psychologist traveled to the Hyde School to reevaluate K.J.'s "current levels of functioning" given her intervening hospitalization. J.A. 300-01, 306-10. The record reveals that at the time of the psychologist's visit, K.J. continued to have many of the same academic and behavioral difficulties that she had demonstrated the prior year at her FCPS high school. J.A. 307; *see also* J.A. 335, 388-89.

The IEP team, the parents, and the Hyde School's Director of Studies (who participated via speakerphone) then convened on December 18, 1997. The team developed an IEP proposing a local private day school, rather than the Hyde School, as the appropriate placement for K.J. J.A. 312-23. The school board maintains, and the parents do not dispute, that "private day school" denotes a school setting offering a full-day, non-residential educational program, smaller class sizes, and on-site clinical personnel. J.A. 77-88.

The IEP did not identify a particular school. J.A. 11, 18, 72-73. The parents contend that the IEP team members recommended conflicting placements for K.J. and that the IEP case manager improperly and inaccurately amended the IEP after the meeting to reflect a consensus on a private day setting as the recommended placement. J.A. 48. Contrary to the parents' assertion, however, the evidence demonstrates that the team did reach a consensus as to a private day placement during the course of the IEP meeting. *See* J.A. 72-74, 84-85, 101, and 312.

K.J.'s father signed the IEP form at the meeting, indicating that he did "NOT AGREE with the contents and recommendations of the proposed IEP," and thus rejected the proposed placement. J.A. 312. Nonetheless, subsequent to this meeting, K.J.'s mother visited the private day schools identified orally by the IEP team as likely placements. She concluded that the schools did not offer the same opportunities for college-track classes and interscholastic sports that K.J. had in the regular education public high school and that K.J.'s classes would be comprised almost entirely, if not exclusively, of special education students. The parents apparently disapproved of the suggested private day schools on this basis. J.A. 10. The parents therefore continued to enroll K.J. at the Hyde

4

School, although K.J. lived at home for summers and holidays. J.A. 10-11, 18, 1408.

More than one year later, on January 29, 1999, the parents initiated an administrative appeal requesting reimbursement from FCPS of the non-educational costs of Graydon Manor and tuition for the Hyde School for both the 1997-98 and 1998-99 school years, as well as attorneys' fees. J.A. 968-69. In support of their request for reimbursement, the parents alleged that FCPS violated its duties under the IDEA and associated state regulations with respect to K.J.. *Id.*

On July 30, 1999, a state hearing officer determined that a consensus of the IEP team at the December 1997 IEP meeting was "that [K.J.] should be placed in a local private day placement" and that this placement met the requirements of the IDEA. J.A. 1125-26. Nonetheless, the hearing officer concluded that FCPS should reimburse the parents in an amount equal to the cost of a "suitable local private day program." J.A. 1126. Then, although K.J. should have graduated the prior month, the IEP team learned that K.J. had not satisfied her high school graduation requirements because she had not completed her senior English class. J.A. 1133-34.

Accordingly, on August 27, 1999, the IEP team convened again, over the parents' objection. This meeting resulted in a recommendation to place K.J. at the Woodson Center, a program facility located adjacent to and as part of a local FCPS high school. J.A. 1133-34, 1147-50, 1408. A representative of the Woodson Center participated in the IEP team meeting. J.A. 1136. The Woodson Center provided college-track Advanced Placement classes at the high school co-facility, a special education program for students with disabilities, and clinical personnel; the IEP team also felt it would provide an appropriate transition from the residential school to a larger college setting. The parents again rejected the IEP and continued K.J. at the Hyde School for a third year. J.A. 1135.

In the meantime, both the parents and FCPS appealed the hearing officer's July 30, 1999, decision. In their appeal, the parents sought reimbursement for the Hyde School tuition for the 1999-2000 school year, which they incurred subsequent to the hearing officer's decision, in addition to the relief previously requested. J.A. 1406. The review-

ing officer agreed with the hearing officer that FCPS had recommended an appropriate placement for K.J. However, the reviewing officer reversed the hearing officer's directive that FCPS reimburse the parents because the reviewing officer found that the parents did not provide proper notice to the school before placing K.J. at the Hyde School or before continuing her there for the 1998-99 school year. J.A. 1406-12.

## II.

In November 2000, the parents filed suit against the Fairfax County School Board in Virginia state court, appealing the reviewing officer's decision pursuant to the IDEA and its state corollary, Va. Code Ann. § 22.1-214 (Michie 2000). The school board removed the case to federal district court.

On cross-motions for summary judgment, the district court granted summary judgment to the school board. *K.J. v. Fairfax County Sch. Bd.*, No. 00-1898 (E.D. Va. Aug. 14, 2001). The district court noted at the outset that while it was required to "make an independent decision based on the preponderance of the evidence," it also was required to "give due weight to the state administrative findings" and consider such findings "prima facie correct." *Id.* at 8 (citing *Sch. Comm. of Town of Burlington v. Dep't of Educ. of Massachusetts*, 471 U.S. 359, 369 (1985); *Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 385 (4th Cir. 2000); *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1992)).

The district court then proceeded to consider whether FCPS committed any procedural or substantive violation of the IDEA that entitled the parents to reimbursement. The district court first held that any procedural violations committed by FCPS, including its failure to offer a *specific* placement in writing at the December 1997 IEP meeting or to have a school representative from the proposed placement present at the IEP meeting, were not actionable because they did not result in a loss of an educational opportunity to K.J. or infringe on the parents' right to participate in the IEP process. *Id.* at 10-17. The court noted that FCPS, with the parents' participation, properly decided to wait until K.J. was stabilized and discharged from Graydon Manor before making a placement decision and that FCPS

6

adequately identified a school placement for K.J. when it pro-posed in writing a "private day school" at the December 1997 IEP meeting. *Id.*

As to the failure to include a representative from a proposed private day school at the December 1997 IEP meeting, the district court observed that one of the primary purposes of including such a repre-sentative is "to ensure that the proposed placement is tailored to meet the child's needs." *Id.* at 14. In K.J.'s case this failure did not result in loss of an educational opportunity because "sufficient and varied personnel" were present at the meeting, including an FCPS representative "knowledgeable about the various private day schools' resources" and whose duties included negotiating placements, and because the parents rejected the proposed placement, rendering any tailoring to the individual private day school unnecessary. *Id.* at 14-15. The court also observed that "the [parents], and their attorney, fully participated in the meetings where the IEP team developed an educational plan." *Id.* at 13.

The district court further determined that each of the placements proposed by FCPS met the IDEA's substantive requirements for a "free and appropriate education," defined by the Supreme Court as "educational instruction designed to meet the unique needs of the [student with a disability], supported by such services as are neces-sary to permit the child `to benefit' from the instruction." *Id.* at 17 (quoting *Hendrick Hudson Dist. Bd. of Educ. v. Rowley*, 458 U.S. 176, 187-89 (1982)). The district court explained that the private day schools offered "small classes, extensive individual attention, struc-ture and clinical support, experienced staff trained in special educa-tion and emotional disabilities, and many advanced level mathematics, science and foreign language courses." *Id.* at 18. Simi-larly, the Woodson Center offered "clinical support, advanced level college preparatory classes, the opportunity for a smooth transition from a small residential setting to a larger college setting, and a spe-cial education program designed for students with emotional disabili-ties." *Id.*

The court therefore denied all requests for additional reimburse-ment. The court concluded that the parents were not entitled to further reimbursement for the cost of K.J.'s hospitalization at Graydon

7

Manor because the IDEA requires only reimbursement for appropriate educational services and because "[i]t is undisputed that FCPS reimbursed the [parents] with $8,440 for the educational services [K.J.] received from Graydon Manor. The [parents] point to no evidence which indicates that Graydon Manor provided [K.J.] with education services which exceeded this amount." *Id.* at 19 (citing 20 U.S.C. § 1412(a)(10)(c)).

The court then held that the parents were not entitled to reimbursement for the tuition of the Hyde School because a court, in its discretion, can award reimbursement only if the school district has denied the student a "free and appropriate education" and the parents' chosen placement is otherwise appropriate. *Id.* at 18-22 (citing 20 U.S.C. § 1412(a)(10)(C); *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 15 (1993)). Because each of the placements proposed by FCPS offered a "free and appropriate education" for K.J., the court concluded that the first of those prerequisites had not been met, without reaching the second. Moreover, even as to the period preceding FCPS's proposed placement at a private day school, a court may deny "reimbursement to parents who unilaterally place their child in private programs" if the parents fail to give notice of "`their intent to enroll their child in a private school at public expense.'" *Id.* at 19-20 (quoting 20 U.S.C. § 1412(a)(1)(C)(iii)(I)). Because it found that the parents failed to provide such notice, the court denied reimbursement of these expenses as well. *Id.*

III.

The parents contend that the district court erred in granting summary judgment against them to the school board. They argue that FCPS's procedural violations in failing to propose in writing placement at a *specific* private day school and to include a representative of that school in the December 1997 meeting resulted in a denial of a "free and appropriate education." They further challenge the district court's determination that FCPS's proposed placements and the services delineated in the IEP satisfied the IDEA's substantive requirements.

After careful review of the record, the parties' written and oral arguments, and the governing legal principles, we conclude that the

8

parents cannot overcome their burden of showing that the state hearing officer's factual findings were erroneous, *see Barnett v. Fairfax County Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991), and that the district court correctly decided the legal issues before it. Accordingly, we affirm on the reasoning of the district court.

*AFFIRMED*

9